In the Matter of the Estate of Elizabeth La Rue, Deceased. Bernice Berman, Executor of the Will of Elizabeth La Rue, Deceased, Petitioner-Appellee, v. Earl La Rue, Respondent-Appellant.

Gen. No. 49,451.

First District, Second Division.

December 1, 1964.

Richard A. McGrath, of Chicago, for appellant.

Paul Shanoff, of Chicago (Cecil A. Caplow and Lawrence Jacobs, of counsel), for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This is a citation proceeding for the recovery of the proceeds of two savings accounts alleged to have been the property of Elizabeth LaRue, hereinafter referred to as decedent. After hearing, the court entered an order directing the respondent, Earl LaRue, decedent's son, to pay over to the estate a sum of money equal to the amount on deposit in the accounts at the time they were opened, less credits for expenditures made by respondent from the accounts on behalf of the decedent.

In March or April of 1962, decedent moved into the home of respondent and lived with respondent's family until her death on October 10, 1962. Decedent underwent a cataract operation on her eye prior to March, 1962, and was also ailing with arthritis. Prior to the time she moved into respondent's home, decedent lived in an apartment below her daughter, Bernice Berman, the petitioner herein and executrix of decedent's estate. The building in which decedent previously lived was owned by her and petitioner in tenancy in common. Decedent also had another child, Raymond LaRue, who lives on the West Coast.

The two savings accounts were originally in the names of decedent and her son Raymond as joint tenants. The names on the account at the First Federal Savings & Loan Association, which had a balance of $8,098, were changed to decedent and respondent as joint tenants with right of survivorship on April 23, 1962. Respondent withdrew all of the funds from this account on May 8, 1962. The names on the account at the Continental Illinois National Bank & Trust Company of Chicago, which had a balance of $9,399.24, were changed to decedent and respondent as joint tenants with right of survivorship on May 3, 1962.

469

At various times prior to the death of decedent, respondent withdrew all of the funds from this account, and it was closed on October 10, 1962, the day of decedent's death.

Respondent was allowed to testify at the citation hearing that the names on the accounts were changed to his and decedent's after she told him to use the money for her expenses and to spend it as he saw fit; respondent identified decedent's signatures on the account signature cards. With the money from the accounts, respondent built an additional room onto his house for decedent, furnished the new room, purchased a special television set for decedent equipped with a hearing device, purchased a hearing aid, and employed a nurse to take care of decedent. Respondent further stated that of the $17,000 in the accounts at the time they were opened in his and decedent's names, he had spent all but some $2,000 thereof by the time decedent died.

The court allowed respondent to make an offer of proof after refusing to allow him to testify to conversations with decedent to the effect that the funds in the accounts were a gift from decedent to respondent. The offer of proof was substantially that decedent told respondent that both of the accounts were to be used for her expenses during her lifetime and that the balance, if any, at her death was to be respondent's in consideration for taking care of her; that on another occasion, decedent told respondent that the Continental account was to be used for her expenses and that the balance at her death was to be his; and that decedent reminded respondent of prior litigation involving petitioner and decedent's deceased husband, saying, "You know your sister." The court refused to allow this as evidence on the grounds that Section 2 of the Evidence Act (Ill Rev Stats 1961, c 51, § 2) barred him from testifying to

conversations with the decedent since he had an interest in the outcome of the controversy, and also since the testimony was self-serving and therefore not acceptable.

Bernice Berman testified that there had always been a friendly feeling between her and decedent; that she attempted to visit decedent while she lived with respondent but was unable to get into the house; that a short while before decedent moved into respondent's home, decedent stated that she wanted all of her property divided equally between the three children; and that decedent told her that she wanted to live with respondent because it was about time that respondent did something for her.

Mrs. Berman identified a statement in respondent's handwriting purporting to be a distribution of the proceeds of decedent's estate. Listed in the statement were the items of funeral expenses, money left, cash left, and insurance policy proceeds. The statement showed a balance of $1,030.75, after funeral expenses, as "money to share 3 ways," and which was divided into "$343.58 for each." At the bottom of the statement appears the notation: "I took my $343.58 as I needed it." Respondent later testified that the statement represented an accounting of the money left in the Continental account.

Emma Lynch testified for respondent, stating that she was a close friend of decedent for some forty years prior to decedent's death. She stated that decedent was happy living with respondent; that decedent said respondent was a "good boy"; that whenever decedent would talk about Mrs. Berman she, decedent, would get upset and cry; that about four years prior to the trial decedent told her that Mrs. Berman drew a line down the center of the basement and told decedent to stay on her own side; that decedent spoke to her of the children on a number of occa-

sions; that decedent told her that Raymond had borrowed some money from her and had not repaid it; and that the last time she spoke to decedent was after decedent had moved into respondent's home and had acquired the new hearing aid. Mrs. Lynch was never asked whether decedent had spoken to her of the gifts allegedly given to respondent.

Decedent executed a Last Will and Testament in November of 1961, some five months prior to moving into respondent's home, in which she divided all of her property equally between the respondent, the petitioner, and Raymond.

The court found that the signatures on the account signature cards were different from that on the Will; that no evidence was offered as to decedent's intention at the time the account cards were signed nor were there any witnesses to the signatures other than respondent; that respondent's offered testimony was self-serving and therefore unacceptable; and that his testimony was barred by Section 2 of the Evidence Act. Respondent was ordered to turn over all the funds originally in the accounts, less credits for expenditures made by him on behalf of decedent. It is from this order that respondent appeals.

Respondent maintains in the alternative that, since all of the funds in both accounts had been withdrawn prior to the death of decedent, no question of survivorship arose, but at most only the question of a debt owing to the estate, the resolution of which question is unavailable in citation proceedings; or, that petitioner did not show that respondent acquired the proceeds of the accounts by such conduct which would lead a court to set aside an executed gift. Neither position is tenable.

■ As to the first alternative, the fact that no survivorship question is technically presented is immaterial. By his own testimony respondent established

472

that a fiduciary relationship existed between him and decedent as to the funds in question: he was to use the funds for decedent's expenses during her lifetime. The question of a debt owing to the estate therefore does not arise, since the change of names on the accounts did not constitute a loan to respondent but was done simply to place the funds at respondent's disposal for decedent's convenience. No debtor-creditor relation came into existence. Any withdrawals during decedent's lifetime by respondent for his own purposes constituted a conversion of the funds and consequently gave the Probate Court jurisdiction over the matter. Ill Rev Stats 1961, c 3, § 183; In re Estate of Willich, 338 Ill App 289, 87 NE2d 327.

Respondent's second alternate position likewise must fail for the reason that, by his own offer of proof, no inter vivos gift was intended by decedent, if in fact any gift was intended at all. The offer of proof was to the effect that the funds were to be used by respondent for decedent's expenses during her lifetime and the balance, if any, was to be respondent's *on her death.* At most can it be said that, if this was what had transpired between respondent and decedent, it was decedent's intention that title to the funds pass only at decedent's death. Consequently, no executed gift of the funds could have occurred during decedent's lifetime by virtue of respondent's withdrawals.

■ Respondent maintains that the court erred in refusing to allow him to testify to conversations with decedent in order to establish donative intent, for the reason that the Probate Court has the duty under Section 185 of the Probate Act (Ill Rev Stats 1961, c 3, § 185) to hear self-serving testimony where it is necessary for a full and fair hearing of the case. In support of this position respondent relies on the case of In re Estate of Hill, 30 Ill App2d 243, 174 NE2d

233. The Hill case, however, involved circumstances different from those involved here. In the Hill case, respondent made an offer of proof as to what the alleged donor said to her; the offer was objected to and the objection was sustained. Here, on the contrary, the court listened to the offer of proof over the objection of petitioner, and later concluded it would all be self-serving. Secondly, respondent in the Hill case was offered to the court to be examined by the court; no such offer was made here. Finally, respondent's testimony in the Hill case was the only way by which she could establish a gift since there was no other evidence available in that regard; without hearing the testimony, even though self-serving, there would have been no full and fair hearing of the case. Here, however, Mrs. Lynch testified on respondent's behalf for the purpose of establishing decedent's donative intent. While decedent confided in her concerning many personal family matters, Mrs. Lynch was not asked while on the witness stand whether decedent mentioned anything about a gift to respondent. Further, respondent's own testimony and actions negate a gift. He stated that of the $17,000 in the two accounts he had spent all but some $2,000 thereof by the time decedent died. This $2,000 then appeared on the statement executed by respondent as "money left" and which respondent identified at the hearing as an accounting of the money left in the Continental account. If decedent made a gift to respondent of the balance left in the accounts after decedent's death, it is wholly inconsistent for respondent to have made an accounting of the funds left and a division thereof to his brother and sister. Nor did respondent attempt to explain why the division was made other than to say that the statement represented an accounting of the funds left in the Continental account. Under these

circumstances we cannot say that the court abused its discretion in holding that the matters brought out in the offer of proof were self-serving and that therefore they were unacceptable as evidence of a gift.

Respondent also takes the position that since Mrs. Berman, who had an interest in the outcome of the case as an heir and devisee, was allowed to testify as to matters bearing on decedent's donative intent, so should respondent have been allowed to testify to such matters. Respondent, however, overlooks the fact that Mrs. Lynch was offered as a witness and covered this same area that respondent, by self-serving testimony, would have covered had he been allowed to testify.

■■ The fact that the court refused to allow respondent to testify to conversations with decedent on the grounds that he was barred by Section 2 of the Evidence Act does not constitute reversible error under the circumstances of this case. If the decision of a court is correct under the circumstances of the case, it will not be reversed on appeal for the reason that an incorrect means was used to arrive at the decision or error was committed at the trial; and this is particularly true where reversal and retrial would only result in the same decision. Empire State Surety Co. v. Schillinger Bros., 167 Ill App 632; Swift & Co. v. Dollahan, 2 Ill App2d 574, 120 NE2d 249. The fact that the refusal to allow respondent to testify to any conversations with decedent was predicated on Section 2 of the Evidence Act is immaterial. Respondent's testimony was self-serving and inconsistent with his handwritten statement of accounting. Under these circumstances and along with the fact that Mrs. Lynch testified concerning donative intent, the court, in its discretion, could have predicated its refusal on Section 185 of the Probate Act. The court's

order will not be reversed on this ground, especially in view of the fact that a retrial would result in the same decision.

██ ██ Finally, respondent states that the court erred in requiring him to prove donative intent existed on decedent's part. He claims that the burden was on petitioner to prove that there was no donative intent on decedent's part, for the reason that as between parent and child a gift is always presumed, which presumption must be rebutted by the party challenging the gift. Respondent, however, overlooks the fact that his own testimony established that a fiduciary relationship existed between him and decedent as to the bank accounts since he was to use the funds for her expenses while she was living at his home. Where a fiduciary relationship exists, even as between parent and child, a gift is never presumed, but rather the burden of proof is on the party claiming there was a gift to establish a gift in fact existed. Krieg v. Felgner, 400 Ill 113, 79 NE2d 60.

The order is affirmed.

Order affirmed.

FRIEND and BRYANT, JJ., concur.