(No. 38989.—

DIXON NATIONAL BANK, EXR., Appellee, *vs.* CORA MORRIS, Appellant.

*Opinion filed September 28, 1965.*

ALBERT N. KENNEDY, and GUNNER & KELLER, of Dixon, and RALPH M. EATON, of Mt. Carroll, (ALBERT N. KENNEDY, RALPH M. EATON, and J. RICHARD KELLER, of counsel,) for appellant.

DIXON, DEVINE, RAY & MORIN, of Dixon, (GEORGE K. RAY, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is a citation proceeding, commenced by the Dixon National Bank, as executor of the estate of Eva M. Robinson, to determine the ownership of a savings account opened in the joint names of the deceased, and her daughter, Cora Morris, the appellant. All deposits into the joint account were made by the deceased, and the question for decision is whether she intended to make a gift to the appellant. Both the trial court and the appellate court, (51 Ill. App. 2d 307) held that the account belonged to the estate because the appellant's name was placed on the account solely for the convenience of the deceased. (See *In re Estate of Schneider,* 6 Ill. 2d 180.) We granted leave to appeal in order to consider the question in the light of *Murgic* v. *Granite City Trust & Savings Bank,* 31 Ill.2d 587, which was decided after the appellate court's decision in this case.

The deceased lived on a farm with her husband until his death in 1958. Thereafter she purchased a trailer which she brought to the farm of the appellant and her husband. She lived in the trailer until she died. The appellant first denied that her mother paid rent to the appellant's husband, but admitted it after cancelled checks had been exhibited to her. The deceased sold her farm in 1961. The proceeds from this sale constitute nearly all of the funds deposited in the joint account.

The appellant testified that when the account was opened her mother was 73 years old, had poor eyesight, and could not read fine print. In a deposition the appellant testified

that her mother had read the fine print on the joint account signature card when the account was opened. At the trial she testified that an officer of the bank had read the card to her mother and explained that in the event of death the money in the account would go to the survivor and that her mother then said that was the way she wanted it. The bank officer did not corroborate this testimony. He did not recall the specific conversation but he testified that when such an account is opened "we tell them this is for a joint account."

In her deposition the appellant testified: "It was during this time she told me she was going to put the money in the savings account, and I suggested to her at that time perhaps it would be best if she put or added my name to that savings account, if anything happened in order to have somebody else to pay the bills. I mentioned it to her for the simple reason that if sometime she might become ill or [sic] a time she would not be able to go to town, and she needed money, it would be possible for me to draw it for her." The passbook was retained by the deceased at all times, and the appellant made no deposits or withdrawals. A letter written by the deceased before she sold her farm, and a Christmas card written after she had sold it, indicated that she believed that she was being badly treated by the appellant, and that the appellant would not support her when the proceeds of the sale of her farm were exhausted. By her will, however, the deceased left half of her estate to the appellant, one fourth to the children of another daughter, and one fourth to the children of a deceased son. After her mother's death, the appellant told the attorney representing the executor that the joint account had been opened so that her mother's bills could be paid if she was incapacitated. During that conversation there was no mention of the survivorship feature of the account.

The appellant's sister-in-law testified that the deceased had told her that the money in the joint tenancy account was "with Cora, for Cora" and that prior to the sale of

the farm the deceased had told her that the appellant would get the farm. The appellant also urges that the deceased knew what joint ownership involved, since she and her husband owned their farm in joint tenancy before the husband's death.

The trial court, without indicating what burden of proof it was applying, held "that the evidence was sufficient to overcome any presumptión of donative intent and to demonstrate that this account was created only for the donor's benefit." The appellate court affirmed, stating that the burden was upon the executor to prove, by the greater weight of the evidence, that there was no gift. In *Murgic* v. *Granite City Trust & Savings Bank,* 31 Ill.2d 587, we said: "The legislative policy to treat the joint account as a useful technique for transferring intangibles dictates that the estate or other person claiming against the survivor should have the burden of disproving intent on the part of the decedent, and the degree of proof required to void the presumption should be clear and convincing. * * * We hold that an instrument creating a joint account under the statutes presumably speaks the whole truth; and, in order to go behind the terms of the agreement, the one claiming adversely thereto has the burden of establishing by clear and convincing evidence that a gift was not intended. This burden does not shift to the party claiming under the agreement." 31 Ill.2d at 590, 591.

In the *Murgic* case the evidence clearly indicated that the donor understandingly created the joint account and that he wanted the money to go to the donee, who was his closest friend. The donor had no relatives in this country, and he felt that his relatives in Croatia did not deserve consideration beyond the gifts he had already made to them. There was no evidence that the account was opened for the donor's convenience. In the present case the clear and convincing quality of the evidence that supports the judgments of the trial and appellate courts is apparent. Those judg-

ments are based primarily upon the testimony of the appellant herself, which showed that the joint account was not established to effect a present gift to her, but rather for her mother's convenience in the event that she needed money but was unable to go to the bank to get it. In this case there is no satisfactory evidence that the mother understood the characteristics of the account that she was opening.

The judgment of the Appellate Court for the Second District is affirmed.

*Judgment affirmed.*