In the Matter of the Estate of Jean H. Weaver, Incompetent.

John William Weaver, Objector-Appellee and The First National Bank of Springfield, Executor of the Will of Dorothy Jean Weaver, Deceased, Intervenor-Appellee, v. Mary W. Lock, Intervenor-Appellant.

Gen. No. 10,756.

Fourth District.

September 26, 1966.

227

Casey & Casey, of Springfield (Edward F. Casey, of counsel), for appellant.

Paul F. Wanless, of Springfield, for appellee.

SMITH, J.

This is an appeal from an order of the Circuit Court sustaining objections to a conservator's report which did not include some joint tenancy property as a part of the estate and the refusal of the court to reopen the case to hear some after-discovered evidence. The trial court treated the joint tenancy property as part of the decedent's estate, the incompetent having died while this litigation was pending.

In 1957, Jean Weaver established a savings account with the Marine Bank and gave a power of attorney to her daughter-in-law, Mary B. Weaver, authorizing her to draw checks on the account and to endorse and deposit checks. Mary Weaver exercised her authority when Mrs. Weaver was hospitalized in 1958. In 1960, Mrs. Weaver cancelled the power of attorney and converted the savings account

to a joint tenancy account with her daughter, Mary Lock. Both signed the usual joint tenancy bank card. In January 1962, she converted this account into a joint tenancy with her son, Bill Weaver, both signing the joint tenancy card. In September 1962, she restored the same account to a joint tenancy with Mary Lock, both signing the card. Mrs. Weaver was hospitalized twice in 1964, the second time being her last. She suffered a stroke about October 15, and was unable to communicate as a result of paralysis. She was then 77 years old. On November 24, Mary Lock was appointed conservator. Jean Weaver died December 23, 1964. Mary Lock filed her inventory after the death of Jean Weaver and listed the savings account as "now the property of Mary W. Lock." Objections to the final report and to this item were filed by an heir. The objections were sustained. There is no doubt but that the funds originally were those of Jean Weaver.

 The understanding creation of a joint tenancy bank account creates a presumption of a gift to the survivor and such presumption can be overcome only by clear and convincing evidence that no gift was intended. Dixon Nat. Bank of Dixon v. Morris, 33 Ill2d 156, 210 NE2d 505; Murgic v. Granite City Trust & Savings Bank, 31 Ill2d 587, 202 NE2d 470; Frey v. Wubbena, 26 Ill2d 62, 185 NE2d 850. Clear and convincing evidence is that quantum of proof which leaves no reasonable doubt in the mind of the trier of fact of the truth of the fact in issue. Cravens v. Hubble, 375 Ill 51, 30 NE2d 622; Finney v. White, 389 Ill 374, 59 NE2d 859; Galapeaux v. Orviller, 4 Ill2d 442, 123 NE2d 321. Where the account is created for the convenience of the decedent, the donative intent is rebutted. See Dixon. Where the evidence shows clearly and convincingly that the donative intent was present and the survivor was to be the ultimate recipient, the right of survivorship will be enforced. See Murgic. In the light of these principles, we turn to the evidence.

229

■ The objector, Bill Weaver, testified that when his mother asked him to sign the joint tenancy card, he asked "why" and she said, "I am frequently ill and I can't get out and I sometimes need money to pay bills and I want you to go and do it for me." He suggested to her that he could get her money and she said, "I don't think you will; it is my money and I am only doing it so that if I am unable to get out someone can do this for me." Mary Lock testified: "The first person that suggested that I had some right to this money was Mr. Hoffman at the bank. It was news to me. . . . Mr. Hoffman wanted to put it in my name and my husband's. I said no, she is not gone, she may not go. My mother never told me she put the money in the bank in order it would be mine when she died. She never told me that." It seems clear to us that the presumption of donative intent, be it treated as engendered by the mother-daughter relationship or by the agreement or by both, is thus clearly and effectively negated. The frequent changes suggest a fitting pattern of convenience and indicate no intention of an ultimate gift to the other joint tenant. This record is more akin to Dixon than it is to Murgic. It is clear that no present gift of an interest in the fund was intended and, further, none of the successive joint tenants even thought so. The judgment of the trial court was correct.

■ The trial court refused to reopen the case upon newly discovered evidence, shown by affidavit, that in September 1964, Mabel Fell, a sister of the decedent, visited with her. In discussing her property, decedent said her two sons had received more money than her daughter, Mary Lock, and she intended to leave her money to her. She further stated she wouldn't have much money left but what she did have she planned to leave to Mary Lock. This testimony is pregnant with the thought that whatever she intended to do, she hadn't yet done it. The joint tenancy account was then in existence. It is patent

that the donor did not think she had accomplished her desires by the creation of the joint tenancy. There was something more to do if Mary Lock was to receive the money, and it is apparent that the decedent was aware of this. The refusal to reopen for this testimony was not error.

There being no error in this record, the judgment is affirmed.

Affirmed.

TRAPP, P. J. and CRAVEN, J., concur.