**Blanch Kirkham and Edith Robinett, Plaintiffs-Petitioners, v. Beatrice Paul Halford, Defendant-Respondent.**

Gen. No. 66–81.

Fifth District.

June 6, 1967.

James E. Buchmiller, of Greenville, for plaintiffs-petitioners, Blanch Kirkham and Edith Robinett.

Gordon Burroughs, of Burroughs, Simpson and Burroughs, of Edwardsville, and Emerson Baetz, of Alton, for appellee.

EBERSPACHER, J.

Lena Paul died testate leaving surviving her, her daughters, Edith Robinett, Blanch Kirkham and Beatrice Halford. By her will she made a monetary bequest to a friend, a bequest of sterling silver and a devise of her home to her daughter Beatrice Halford, a gift of the residue and remainder to her three daughters in equal shares, and nominated her daughter Beatrice Halford as executor.

During the lifetime of Lena Paul, she had created various joint tenancy accounts in First Federal Savings and Loan Association of Edwardsville and Clover Leaf Home Building and Loan Association of Edwardsville which at the time of her death amounted to $18,000 in principal, and had purchased a certificate of deposit in the National Bank of Highland in the amount of $2,500. As to each account and the certificate of deposit, cards or agreements were signed by Lena Paul and her daughter Beatrice Halford, the agreements complying with the statutory provisions for the creation of joint tenancy in personal property with the right of survivorship. Ill Rev Stats c 76, § 2.

All of the funds concerned were contributed by Lena Paul, and Beatrice Halford had never made a claim on the accounts for principal or interest until after her mother's death. The interest payments were made to Lena Paul during her lifetime, but there was uncontradicted testimony that Lena Paul, when she received interest payments referred to them as "our interest" and gave some of the interest money to Beatrice Halford. There was also uncontradicted testimony that Beatrice Halford and her husband had borrowed money from her mother for

the purchase of their home, and secured the loan with a mortgage, during the time these joint accounts were in existence. Mrs. Paul had also made loans to the other two daughters during this period. After the death of Lena Paul, the executrix failed to inventory these joint tenancy accounts in the estate; the other two daughters, appellants herein, filed a petition asking for a citation to discover assets. Citation was issued against the financial institutions and Beatrice Halford, the executor and co-tenant. After hearing, the court found that a joint tenancy was created by the decedent and Beatrice Halford in the accounts and held against the petitioners on their petition for citation.

In In re Estate of Schneider, 6 Ill2d 180, 127 NE2d 445, the court held that parol evidence is admissible to go behind the terms of a joint bank account, and show the absence of donative interest on the part of the original owner. Subsequently in Frey v. Wubbena, 26 Ill2d 62, 185 NE2d 850, rules were laid down which were designed to clarify and uphold survivorship rights in such familiar cases as joint bank accounts, joint savings and loan accounts, and certificates of corporate stock issued in the name of two or more persons as joint tenants with rights of survivorship, reaffirming the doctrine of Schneider, recognizing that courts may, in proper cases, look behind the form of the transaction to determine the rights of the parties between themselves. In Murgic v. Granite City Trust & Savings Bank, 46 Ill App2d 334, 197 NE2d 112, the Appellate Court held that the deposit agreement constituted prima facie evidence of donative intent on the part of the decedent, and that since there was some evidence tending to rebut the donative interest the burden shifted to the survivor who was then required to show by clear and convincing evidence that a gift was intended; that the survivor had failed to maintain that burden of proof and that decedent's estate was entitled to the purported joint account. Reviewing the case, our Supreme

Court in their opinion at 31 Ill2d 587, 202 NE2d 470, held that an instrument creating a joint account under the statutes presumably speaks the whole truth and that the one claiming adversely to the agreement, has the burden of establishing by clear and convincing evidence that a gift was not intended, and that the burden does not shift to the party claiming under the agreement. They found that the administrator had not proved by clear and convincing evidence that a gift was not intended.

In Dixon Nat. Bank v. Morris, 33 Ill2d 156, 210 NE2d 505, it was held on the facts that the mother's executor had sustained the burden of establishing by clear and convincing evidence that a gift to the daughter had not been intended. Although it reaches a different result, on a different set of evidentiary facts, than was reached in Murgic, supra, it does not purport to change the principles laid down in that case. In the opinion, the Murgic case is quoted with approval at 33 Ill2d p 159, 210 NE2d p 506:

> "In Murgic v. Granite City Trust and Savings Bank, 31 Ill2d 587, 202 NE2d 470, we said: 'The legislative policy to treat the joint account as a useful technique for transferring intangibles dictates that the estate or other person claiming against the survivor should have the burden of disproving intent on the part of the decedent, and the degree of proof required to void the presumption should be clear and convincing. . . . We hold that an instrument creating a joint account under the statutes presumably speaks the whole truth; and, in order to go behind the terms of the agreement, the one claiming adversely thereto has the burden of establishing by clear and convincing evidence that a gift was not intended. This burden does not shift to the party claiming under the agreement.' "

The Supreme Court affirmed the holding of both the trial court and Appellate Court saying:

"In the present case the clear and convincing quality of the evidence that supports the judgments of the trial and appellate courts is apparent. Those judgments are based primarily upon the testimony of the appellant herself, which showed that the joint account was not established to effect a present gift to her, but rather for her mother's convenience in the event that she needed money but was unable to go to the bank to get it. In this case there is no satisfactory evidence that the mother understood the characteristics of the account that she was opening."

Both parties to this appeal rely on the holding in Dixon Nat. Bank v. Morris, supra; the appellee to sustain the trial court's holding on the theory that appellants have failed to sustain their burden of proof; the appellants on the theory that the accounts were only for the convenience of the decedent, and that she did not understand the legal effect or significance of such accounts.

The testimony was conflicting and inconsistent as to the decedent's business ability, her understanding and physical condition. When called under section 60 of the Practice Act, Beatrice Halford testified that she used the word "convenience" in a conversation that occurred immediately upon the other two sisters learning of the existence of the joint accounts. She explained her use of the word referred to the convenience to either she or her mother getting the money out at any time without a loss of interest, since the greater part of the funds had previously been invested in joint certificates of deposit, and could not be withdrawn at any time without a loss of interest, and that the certificates of deposit had only yielded 2% while the savings and loan accounts drew 4%. She also testified that the joint accounts were created because her mother wanted her to have the money. An attorney called in to open the box in which the evidence of the joint tenancies was contained, in response to a question as to whether either of appellants inquired of

Beatrice Halford why their mother had made the certificates in joint tenancy, testified: "There was a heated discussion about the joint tenancy and one of the sisters of Mrs. Halford said, 'Well, why did she do it?' and Mrs. Halford said 'because she wanted me to have it.'" His representation of Mrs. Halford had been terminated before the filing of the petition for citation, and he had never represented her as executrix of her mother's estate. He was of the opinion that the word "convenience" was not used and that during the argument, the gist of Mrs. Halford's contention was "She wanted me to have it."

Marie Bornheuser, a former neighbor of Mrs. Paul, was acquainted with the three daughters, as well as being a friend of Mrs. Paul. By the terms of the will she was to receive a monetary bequest. Her testimony was to the effect that decedent was a rugged individual who could handle almost any problem by herself, was "very sharp" and had a mind of her own. She further testified that at the time she had taken her to withdraw money from the bank at Highland, and place it in the savings and loan at Edwardsville, she talked to her about joint tenancies, advised her that she was making Mrs. Halford a joint tenant and asked her what she thought about giving one daughter more than the others; when she responded indifferently, Mrs. Paul said "Well, I have discussed it with two prominent business men and they think it is my business too." She was not able to testify as to the exact time of this conversation, but thought it was when Mrs. Paul was 76 to 78 years of age. Mrs. Paul was 82 at the time of her death, which occurred in May 1964 and had made her will on October 31, 1961, which date is later than the creation of each of the accounts here involved.

■■ The decision below necessarily involved the weighing and crediting of conflicting or at least inconsistent testimony. After having heard the witnesses and having observed their demeanor on the witness stand,

305

unlike the trial court in Dixon Nat. Bank v. Morris, supra, the trial court found that a gift was intended; there was before the trier of the fact ample evidence to support such finding and there was a lack of clear and convincing evidence that the accounts were created solely for the convenience of the decedent, or that decedent did not understand the characteristics of the accounts. The conclusion of the trial court based upon substantial evidence, where the trial court has an opportunity to observe the conduct of witnesses, should not be disregarded merely because the reviewing court might disagree with it, or might, as triers of facts, have come to a different conclusion. Rector v. Robinson, 36 Ill App2d 272, 183 NE2d 22; Rude v. Seibert, 22 Ill App2d 477, 161 NE2d 39.

We therefore affirm the judgment of the Circuit Court of Madison County.

Judgment affirmed.

MORAN and GOLDENHERSH, JJ., concur.