In the Matter of the Estate of Loretta C. Dawson, Deceased.
Elwin Dawson, et al., Petitioners-Appellees, v. Janie S. Dawson, Individually and as Executor of the Estate of Loretta C. Dawson, Deceased, Respondent-Appellant.

Gen. No. 68–44.

Third District.

December 17, 1968.

E. A. Gilchrist, of Walnut and Johnson & Martin, of Princeton, for appellant.

Fred Potter, of Princeton, and Mason Bull, of Morrison, for appellees.

ALLOY, P. J.
Petitioners Elwin Dawson, Harold Dawson, Edward Dawson, and Kathryn Brandenburg filed a citation peti-

tion in the Circuit Court of Whiteside County in the Probate Division, requesting that Janie S. Dawson, individually and as Executor of the estate of Loretta C. Dawson, deceased, be cited to appear before the court and be examined with respect to the ownership of the sum of $11,000 on deposit in a joint account in the names of Loretta C. Dawson (deceased) and Janie S. Dawson. The joint account was in the Morrison General Electric Employees Federal Credit Union. Following a hearing upon such petition, the court entered a judgment against the respondent Janie S. Dawson in the sum of $11,000 and ordered said respondent to deposit the sum in the estate account of Loretta C. Dawson, deceased. The question for review is whether the petitioners presented clear and convincing evidence to rebut the presumption of gift established by the joint share agreement between decedent, Loretta C. Dawson, and the respondent Janie S. Dawson.

The decedent, Loretta, had lived with her son, Leo Dawson, and his wife, Janie S. Dawson (the joint owner named in the account), for approximately 20 years prior to her death on August 6, 1966. In March 1962 Loretta received $40,000 as proceeds of the sale of farmland which she had inherited. Loretta told Janie that she wished to put the money out on interest and wished to put a large sum in a credit union. Janie then talked to a Mr. Brady, the treasurer-manager of the Credit Union. Mr. Brady did not feel that Loretta should put the full amount that she had in the Credit Union so he went to talk with Loretta and Janie personally about opening the account. At this meeting in Janie's home were Loretta (the decedent), Janie, Mr. Brady and Leo (who was Loretta's son and Janie's husband). Mr. Brady explained that Loretta was eligible to become a member of the Credit Union and deposit money in her own individual name. He then explained to Loretta that the Credit

Union likes to have joint owners as it makes it easier to dispose of the money in the account at the time one of the owners dies. He read aloud the joint ownership card to all persons present. The card contained the standard provisions to create a joint tenancy. Mr. Brady asked Loretta if she would like to have a joint owner. Loretta said "Yes, I would like to have Janie sign the card." Janie responded by saying "Don't you want Leo to sign the card?" Loretta answered "No, I want you to sign the card." Both Loretta and Janie signed the card at that time. The deposit was in the sum of $10,000. It was stipulated as between the parties that the $10,000 was the sole property of Loretta and that at about the same time Loretta had opened an individual savings account of $25,000 in the Central National Bank of Sterling, and a $5,000 individual checking account in the same bank. The latter two accounts remained in Loretta's individual name and became part of her personal estate. There were no further deposits to the Credit Union account. In July 1966, when the account balance stood at $11,710.83, at the request of Loretta, Janie made a verbal request of the Credit Union for a withdrawal of $710.83 and also requested that the check be made payable to Loretta C. Dawson. This was done, leaving a balance in the account at the time of the death of Loretta of $11,000.

Loretta Dawson's will was probated and Janie Dawson was named as Executor. The inventory filed in the Loretta Dawson estate listed the $11,000 account as a joint account owned by the decedent and Janie S. Dawson and such inventory further specified that it was not subject to claims. Janie did not withdraw any funds from the joint account after the death of Loretta. Four of the children of Loretta (petitioners herein described) petitioned the court to have Janie Dawson examined in regard to the ownership of the $11,000 joint account. At the hearing there was testimony about the account by

Janie and several of Loretta's children and their husbands and wives. As we have indicated, at the close of the evidence the trial court, having heard the matter without a jury, found that the $11,000 properly belonged to and should be paid by the said Janie S. Dawson into the estate of Loretta C. Dawson, deceased, and accounted for as an asset of her estate.

■ ■ The parties recognized that the burden of proof in establishing that there was no gift in the joint account was imposed on petitioners and required to be established by clear and convincing proof. It was also clear that the trial court was not limited to looking only to the events at the time the account was created, but could consider all matters and declarations occurring after the establishment of the joint account as an aid in discovering intention of the parties at the time deposit was made. In the state of the record, the basic problem is whether the trial court was justified in determining that petitioners had by clear and convincing evidence proved that the joint account was not to pass to Janie Dawson, but was to be a part of the estate of Loretta Dawson.

■ ■ Until recent years, joint accounts were permitted to pass to the survivor. In In re Estate of Schneider, 6 Ill2d 180, 127 NE2d 445, however, the Supreme Court looked behind the written joint tenancy agreement to find that the account had actually been established as a matter of convenience rather than a gift to the surviving joint tenant and thus should be an asset of the estate of the first joint tenant to die. Other Illinois cases developed in detail the theory of looking behind the form of the written transaction to determine the actual intent of the parties themselves. In Murgic v. Granite City Trust & Savings Bank, 31 Ill2d 587, 202 NE2d 470, the court held that the written agreement or instrument creating a joint tenancy "presumably speaks the whole truth," and that one who tries to show that the joint property should be included in the estate of

the first joint tenant to die, has the burden of establishing by clear and convincing evidence that a gift was not intended. Although the intent of the deceased joint owner at the time he created the joint tenancy is the determining factor, in this State the courts have looked to conversations, circumstances, and events occurring after the creation of the joint tenancy in order to ascertain the actual intent of the parties. In the case of In re Estate of Stang, 71 Ill App2d 314, 218 NE2d 854, Stang put stock in his name and another as joint tenants and then left in his bank box an invalid unwitnessed will explaining how he wanted the stock distributed. The court recognized that the will was invalid but it still looked to the writing to see its effect upon the intent to create a gift by joint tenancy. In that case the court stated (at page 317):

> "Moreover, evidence of the lack of donative intention must focus upon or relate back to the time of the creation of the joint tenancy."

The Supreme Court in Dixon Nat. Bank v. Morris, 33 Ill2d 156, 210 NE2d 505, specified that in determining if a joint tenancy account should be paid into the estate of the decedent, the court should consider such things as deposits made after the account was opened, retention of the passbook and declarations by the surviving joint tenant after the account was created. The court concluded that all of such factors are evidence of the intent of the deceased joint owner in creating a joint account.

In many cases which have been considered, it was established that the joint account was opened strictly for convenience of writing checks by both parties, or in obtaining money if the real owner of the joint account was incapacitated (In re Estate of Schneider, 6 Ill2d 180, 127 NE2d 445; Dixon Nat. Bank v. Morris, 33 Ill2d 156, 210 NE2d 505; In re Estate of Weaver, 75

Ill App2d 227, 220 NE2d 321). In such cases the court concluded from the evidence that a joint account was created as a convenience for the decedent. In Koziol v. Harris, 82 Ill App2d 472, 226 NE2d 387, a joint account was being considered while both the joint account holders were still alive. The party who did not furnish the money for the account withdrew the money from the account. The court found that there was no donative intent because there was testimony by the party withdrawing the money that "the way I feel it is still his money." The court found that the person withdrawing was required to account to the one who furnished the money for the account. Cases in which the evidence failed to rebut the presumption of donative intent in setting up a joint tenancy account such as Murgic v. Granite City Trust & Savings Bank, 31 Ill2d 587, 202 NE2d 470, Armstrong v. Daniel, 88 Ill App2d 31, 232 NE2d 218, and Kirkham v. Halford, 83 Ill App2d 300, 227 NE2d 527, involved very little proof to rebut the presumption of a valid joint tenancy.

■ ■ As a result of an analysis of the cases involving the issue, it becomes apparent that each case must depend upon the facts and the evidence in the cause. In the case before us, it was stipulated that the entire $10,000 deposited belonged to the decedent, Loretta. Mr. Brady of the Credit Union testified as to events when the account was opened and it is clear from the record that Mr. Brady first suggested a joint account "because it made it easier to dispose of the money" in the account. It was only following that statement that Loretta asked Janie to sign the card. There was no showing of any statement by Loretta when the card was signed or at any time thereafter that Loretta wished the account to pass over to Janie at her death. She made no comment at the time the card was read. The evidence indicates that the Credit Union was selected because the interest rate was higher. Janie worked for General Electric and

369

there was testimony that Loretta thought that Janie had to be involved in the account in some way in order for Loretta to open the account. There was no evidence that Loretta understood that she could have had the account in her individual name since she had been accepted as a member. Evidence which would have developed this issue was objected to and excluded. It was also shown that when a withdrawal was made from the account, Janie requested the check for $710.83 be made directly to Loretta. Janie testified that she regarded the money in the Credit Union account as "ma's money" and that it was left on deposit to accumulate interest. She also testified that she didn't want any of "ma's money" because it would cause trouble. She also admitted that she had told certain of the heirs that she would divide the Credit Union money among the children of Loretta after she obtained it. All of such statements by Janie were evidence of the fact that she did not consider this Credit Union account as her account after Loretta died and this corroborated the court's finding that Loretta had no donative intent when she set up the account.

Elwin Dawson, a son of Loretta Dawson, testified that Janie told him on July 4, 1962, that Loretta had put $10,000 in the Credit Union and that the reason it was put there was to draw more interest "for the kids." He also testified that Janie said she cosigned for Loretta only because she worked at General Electric and nobody could deposit money there unless the depositor was an employee. Janie denied this conversation. Ethel Dawson, Elwin's wife, also testified as to statements by Janie that her name was on the account because she worked there and her name on the account really didn't mean a thing. Edward Dawson, another son of Loretta, testified that Janie told him the money was deposited in the Credit Union to draw more interest "for the kids." Gail Babcock, a girl friend of Edward, testified as to a conversation with Loretta (the decedent), where Loretta

370

said the money was in the Credit Union where it drew more interest and "the more interest it gets, the better it will be, because it is for my kids." One of the sons of Loretta also testified that Janie had told him that she was advised not to put the joint account proceeds into the estate as it would increase court costs, so Janie was going to wait until the estate was closed and then she was going to draw it out and divide it. All of such statements were denied by Janie.

■ ■ Under the circumstances, the trial judge had the problem of determining the weight and credibility of the conflicting testimony. He heard the witnesses and observed their demeanor. Considering all of the testimony to which we have referred in the course of this opinion, it is apparent that the trial court did not err in finding that clear and convincing evidence had been presented to rebut the presumption of a donative intent. Such clear and convincing evidence is that quantum of proof which leaves no reasonable doubt in the mind of the trier of fact of the truth of the fact in issue (In re Estate of Weaver, 75 Ill App2d 227, 220 NE2d 321).

Since we find no reversible error in the record, the judgment order of the Circuit Court of Whiteside County will, therefore, be affirmed.

■ Appellee has moved that the cost of the additional abstract of record supplied by appellees be assessed as against appellant individually and not as Executor of the Estate of Loretta C. Dawson. Upon consideration of such motion, we have determined that the cost thereof should not be taxed as against Janie S. Dawson individually but only as against Janie S. Dawson as Executor of the Estate of Loretta C. Dawson. The cost thereof is, therefore, assessed solely as against Janie S. Dawson as Executor of the Estate of Loretta C. Dawson.

Judgment affirmed.

STOUDER and CULBERTSON, JJ., concur.