In the Matter of the Estate of Uriah Odle Foster, Deceased.

Oscar C. Smith, Administrator of the Estate of Uriah Odle Foster, Deceased, Petitioner-Appellant, v. John R. Mansell, Respondent-Appellee.

Gen. No. 68–50.

Fifth District.

January 30, 1969.

Robert S. Hill, of Benton, and Craig & Craig, of Mt. Vernon, for appellant.

Frank H. Walker, of Mt. Vernon, for appellee.

EBERSPACHER, J.

The Administrator of the estate of Uriah Odle Foster brought a citation proceeding under section 183 of the Probate Act for an order requiring John R. Mansell to turn over to the administrator, as property of the estate, a sum of money which had been on deposit in a bank in the name of Foster and Mansell as joint tenants. After a hearing the Circuit Court of Hamilton County found that a joint tenancy account had been created and that the money was not the property of the decedent's estate.

Uriah Odle Foster was 86 years of age when he died intestate on May 6, 1957. He had been in the hospital for the last year and one-half prior to his death, and had been in and out of the hospital from the summer of 1954, when he had one leg amputated. After he had his leg amputated, he was continuously confined to his home or to a hospital.

John R. Mansell was the grandnephew of Foster. He was born and raised in Foster's home by Foster and Mansell's grandmother, Priscilla Davis, sister of Foster. Other nieces and nephews lived in the home at various times for short periods during Mansell's youth.

Shortly after Mansell's marriage in 1936, he moved into a smaller home on Foster's farm and lived there until 1954 when he and his family moved back into the home with Foster. Mansell at all times worked on the farm to earn his livelihood. He received any money he needed from the farm production or oil leases, but there never was any set profit-sharing plan between him and Foster.

Following the amputation, when Foster was not in the hospital, Mansell and his wife provided every physical need, transported him to the doctor, lifted him from bed to wheelchair to toilet, took him meals and sometimes helped him to eat. It was also after the amputation that Foster allowed Mansell to handle practically all of his business affairs, to operate his farm, to pay his bills and to draw checks on his account. Mansell continued, however, to ask his uncle for advice on business matters. Both parties to this appeal agree that a fiduciary relationship was thus created.

On February 28, 1956, while Foster was a patient in the hospital, a joint account card was signed by Foster and Mansell. The only evidence regarding the circumstances of the execution of this card by Foster was Mansell's testimony that Miss Garrison, cashier of The Peoples National Bank, gave him the card which he took to Foster in the hospital and said, "Here's what Miss Garrison sent down here for me and you to sign. This money in the bank the folks is fussing and giving us all this static about. Now, Miss Garrison sent this joint account or whatever they called it for me and you to sign. Are you going to sign it?" Foster said, "Yes, sir, I'm going so sign it." He testified that Foster then signed the card and Mansell returned it to Miss Garrison; Mansell also testified that he obtained the joint account card at the request of Foster.

The joint account signature card was introduced into evidence by the testimony of Miss Garrison, the cashier, who verified that it came from the files of the bank. The wording above the signatures of Foster and Mansell read:

> "We agree and declare that all funds now hereafter, deposited in this account are, and shall be our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common, and upon the death of either of us any

449

balance in said account shall become the absolute property of the survivor. It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives."

A typewritten letter from the files of the bank was also introduced by the testimony of Miss Garrison. It was on The Peoples National Bank stationery and dated February 27, 1956. It read:

"Peoples National Bank, McLeansboro, Illinois

"Gentlemen:

"Please change my account to read as follows: Uriah Foster or John R. Mansell, either or the survivor of either. It is my understand('ing', in handwriting) that his heading will permit John R. Mansell to sign checks against this account and in case of my death the balance of the account will be held by him.

Yours very truly,"

The letter was signed by Uriah Foster. Miss Garrison testified that she prepared the letter. She also stated that in her judgment the signature card and the letter bore the genuine signature of Uriah Foster and the card bore the genuine signature of John R. Mansell.

A joint bank account which had been opened in 1950 in the name of Uriah Foster and John R. Mansell was also introduced into evidence.

A number of witnesses who were either neighbors or business friends of Foster testified that he was not the type of man who could be dominated or influenced by Mansell and that he was of sound mental condition.

The bank account in question had a balance of $5,180.10 when it was opened on February 28, 1956. Subsequent to this date deposits in the total amount of $48,023.86 were deposited in the account. All the funds deposited

were the funds of Foster but were actually deposited by either Mansell or his wife. At the time of Foster's death on May 6, 1957, the balance in the account was $26,248.82. On July 5, 1957, this balance was transferred to Mansell's personal account.

██ The question of who has the burden of proof between a decedent's estate and the survivor of a joint tenancy account was finally settled in Murgic v. Granite City Trust & Savings Bank, 31 Ill2d 587, 591, 202 NE 2d 470, 472:

> "We hold that an instrument creating a joint account under the statutes presumably speaks the whole truth; and in order to go behind the terms of the agreement, the one claiming adversely thereto has the burden of establishing by clear and convincing evidence that a gift was not intended. This burden does not shift to the party claiming under the agreement."

There is no claim here that the creation of the joint account did not comply with our statutes. Ill Rev Stats 1967, c 76, § 2. The burden of proof is therefore placed upon the appellant, the administrator.

██ Appellant contends that the present case is clearly within the holding of Dixon Nat. Bank v. Morris, 33 Ill2d 156, 210 NE2d 205, in which the Court found there was "no satisfactory evidence that the mother understood the characteristics of the account she was opening." In Kirkham v. Halford, 83 Ill App2d 300, 303, 227 NE2d 527, 529, we pointed out that Dixon did not purport to change the principles laid down in Murgic, and that in Dixon the executor had sustained the burden of establishing by clear and convincing evidence that a gift had not been intended. In the case at bar there is no clear and convincing evidence which rebuts the presumption of donative intent, nor does the evidence presented indicate that Foster did not understandingly create the joint ac-

451

count. The only evidence offered by appellant are Foster's old age and poor physical condition. This is not sufficient to rebut the signed signature card accompanied by the signed letter which specifically set forth the effect of the joint tenancy. None of the neighbors and business acquaintances of Foster doubted the soundness of his mind. On the contrary, one witness stated that he thought Foster was "pretty sharp" while another testified that in his opinion Foster's mind was as good as ever. The administrator offered no such witnesses to show that Foster's mind had become enfeebled or that he was unduly influenced. The fact that Foster and Mansell had previously had a joint account is a further indication that Foster was aware of the significance of such an account. The record thus shows that the decedent was mentally alert, that no one took advantage of him, that he was familiar with joint tenancies, and that he was fully aware of what he was doing, and the effect of the creation of the joint account.

Appellant also contends that under In re Estate of La Rue, 53 Ill App2d 467, 203 NE2d 47, that where a fiduciary relationship exists a gift is never presumed, and the burden of proof to establish the gift is on the party claiming the funds. In that case inter vivos gifts were involved and although a joint bank account was involved, the facts were that the surviving joint tenant withdrew all funds jointly held either before or on the day of the death of his mother who had deposited all the money in the joint account for her convenience. The court in La Rue pointed out that the facts showed that no executed gift of the funds could have occurred during the decedent's lifetime by virtue of the withdrawals. The court thus never considered whether the joint tenancy created a gift which was to become effective on the mother's death. The decision reached was based solely on a consideration of the withdrawals as

inter vivos gifts. This citation proceeding is not calling for an accounting of monies of Foster which Mansell withdrew from the account during his uncle's life but only demanding what remained in the account upon Foster's death.

 Appellant also insists that the trial court disregarded the law relating to fiduciaries as enunciated in Curtis v. Fisher, 406 Ill 102, 92 NE2d 327, wherein it was said that transactions of parties standing in a fiduciary relation are prima facie voidable on grounds of public policy, and that thus respondent herein had the burden of overcoming the presumption of fraud. There is nothing in this record that indicates that whatever influence Mansell had was abused, nor that whatever confidence was reposed in him was betrayed; nor is there any evidence that decedent was "putty in the hands" of Mansell. In that case the Court said:

> "The fiduciary relationship is considered to exist and relief granted where influence has been acquired and *abused,* and in those cases in which confidence has been reposed and *betrayed."* (Italics ours.) 406 Ill 113, 92 NE2d 332.

The facts of this case take it outside the decisions of In re Estate of La Rue, supra, and Curtis v. Fisher, supra, and keep it squarely within the rule of Murgic v. Granite City Trust & Savings Bank, supra. The mere fact that a fiduciary relationship may exist is not sufficient to rebut the presumption of donative intent inherent in joint tenancy accounts. A breach of that relationship must be shown so that it will be clear and convincing that a gift was not intended.

To hold that the existence of a fiduciary relationship changes the effect of the ruling in Murgic would be contrary to the reasoning on which that decision is based. Such a holding would promote instability rather

than stability of ownership of joint tenancy accounts and would be a reversion to the confusion which existed in the law prior to Murgic. As the law presently exists, there is nothing which prevents an administrator of an estate from showing a breach of a fiduciary relationship in order to prove that a gift was not intended by the creation of a joint tenancy account.

The trial court, after having heard the witnesses and having observed their demeanor on the witness stand, found that a gift was intended. There was before the trier of the fact ample evidence to support such finding and there was a lack of clear and convincing evidence that the account was created solely for the convenience of the decedent, or that decedent did not understand the characteristics of the account. The conclusion of the trial court based upon substantial evidence, where the trial court has an opportunity to observe the conduct of witnesses, should not be disregarded merely because the reviewing court might disagree with it, or might, as triers of facts, have come to a different conclusion. Kirkham v. Halford, supra.

We therefore affirm the judgment of the Circuit Court of Hamilton County.

Judgment affirmed.

GOLDENHERSH and MORAN, JJ., concur.