In re Estate of Ellen Copp, Deceased—(Martha Cann, Petitioner-Appellant, v. Linda Jones, Respondent-Appellee.)

(No. 70-111; ▮▮▮▮▮▮▮)

Third District—June 14, 1971.

STOUDER, J., dissenting.

Clinton & Tongren, of Peotone, for appellant.

Joseph H. Delaney, of Joliet, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Ellen Copp died at the age of 90 on April 14, 1968. The will of Ellen Copp was executed on January 23, 1968. In the will, the residue of her estate was divided in two equal portions, with one portion bequeathed

to her foster son, Thomas R. Jones (Executor of her estate) and his wife, Linda Jones, and the other portion to the niece of decedent's husband, Martha Jones Cann. In the probate proceedings, Martha Cann petitioned for a citation to bring into the estate of Ellen Copp, money that Linda Jones had received from Mrs. Copp as the surviving joint tenant in a joint tenancy bank account. The trial court found and decreed that the bank account was a joint tenancy account and that the surviving tenant, Linda Jones, had become entitled to the proceeds.

The record in this cause indicates that Mrs. Copp became ill in February 1968 and was hospitalized until March 16, 1968. She lived in a nursing home from March 16, 1968, until the day before her death. In March of 1968, while Ellen Copp was a patient at the hospital, she requested that Linda Jones obtain a signature card for her on a checking account which she had, and, also, on a savings account which had formerly been in the sole name of Ellen Copp. Mrs. Jones obtained the card from the bank and delivered it to Mrs. Copp as she had requested. Mrs. Copp read and signed the card in the presence of Linda Jones and in the presence of two hospital employees. At Mrs. Copp's request, Linda Jones returned the card to the bank. Mrs. Copp stated at the time. "Linda, you have been good to me. You have been upright and honest and I want you to have what's in the bank", and also repeated the same or a similar statement. Mrs. Copp gave the savings account bank book to Linda Jones immediately after she signed the card.

Linda Jones had known Mrs. Copp since 1924. She had visited her often prior to her death and had taken care of Mrs. Copp while she was ill. She also commenced paying Mrs. Copp's bills a couple of years before Mrs. Copp's death. She would receive from Mrs. Copp cash necessary to pay the bills and use the cash for such purposes. While Mrs. Copp was in the hospital, Linda Jones collected the rent owing to Mrs. Copp and used the cash for payment of the regular bills for upkeep of Mrs. Copp's home. Linda Jones had not been aware at that time that Mrs. Copp had a checking account, since Linda Jones had paid all the bills by cash and never by check.

At the time Linda Jones' name was placed upon the signature card, the checking account apparently had no balance. After Mrs. Copp was transferred to the nursing home she asked Linda Jones to transfer $600 from the savings to the checking account. While it is not clear from the record, Linda Jones apparently used all but $53 of the $600 to pay some of Mrs. Copp's nursing home bills. Linda Jones stated at the hearing that she had never requested Mrs. Copp to place her name on any account. After Mrs. Copp's death, the $53 balance was surrendered to the husband of Linda Jones as Executor of Mrs. Copp's estate. The only

question before us is the right of Linda Jones to retain the proceeds of the savings account as a surviving joint tenant.

On appeal in this Court, Martha Cann contends that the court erred in finding that the bank account was a joint account with right of survivorship; that the court erred in finding there was no evidence to overcome the presumption of a donative intent on part of the decedent; and that, since a fiduciary relationship existed; a gift made to a person in such position was *prima facie* void.

■■ In the citation proceeding which was filed by Martha Cann she stated on oath, in her petition to discover assets, that the bank account in question was a joint account between decedent and Linda Jones. In her request for Admission of Facts regarding Discovery of Assets, Linda Jones and her husband were required to, and did, admit that Ellen Copp signed a signature card transferring her bank account in the amount of $6,201 to herself and Linda Jones as joint tenants. On evidence in the record it was clear that both appellant and appellee assumed throughout the hearing that the savings account was in the joint names of decedent and Linda Jones with right of survivorship in the surviving joint tenant. On the basis of the record, therefore, there was no requirement that further affirmative proof be offered for the purpose of establishing the status of the joint account in accordance with par. 2 of ch. 76 of 1969 Illinois Revised Statutes. The petition, the request for admission, the answer to the request, and the record of the hearing in the trial court established that there was, in effect, a stipulation of the parties that the account was a joint tenancy account with right of survivorship and that such arrangement had been created by the terms of a written agreement on the signature card.

■■■ In appellant's next contention, she asserts that the trial court should have found that the donative intent was disproven and that, therefore, the property was not that of the surviving joint tenant but belonged to the estate. We have previously indicated, as was true in many cases determined in this State, that where an individual obtains possession of property pursuant to a written agreement establishing a joint tenancy, the law generally presumes that such agreement is conclusive, and a donative intent is presumed on the part of the predeceasing tenant who was the source of the money. As we stated in *In re Estate of Dawson*, 103 Ill.App.2d 362, 368, 243 N.E.2d 1, the intent of the deceased joint owner at the time he or she created the joint tenancy is the determining factor. We pointed out in the *Dawson* case that prior to the decision of the Illinois Supreme Court in *In re Estate of Schneider*, 6 Ill.2d 180, 127 N.E.2d 445, the Illinois Courts generally regarded the written joint tenancy agreement as conclusive, and refused to look be-

yond the agreement. The court in the *Schneider* case affirmed the trial court decision finding that the property there in question was that of the estate of the alleged donor rather than the surviving joint tenant. In that case the court clearly pointed out that the form of agreement is not conclusive as to the intention of the depositors as between themselves, and that evidence may be introduced to establish ownership in the survivor or ownership in the estate depending on the evidence presented. In that case, the alleged donee, called as an adverse witness, established the absence of a donative intent and thereby overcame the presumption which would otherwise obtain as to the joint tenancy agreement. Applying the principles of the *Schneider* case to the cause under consideration, the facts in the instant case actually support the finding of a donative intent and the desire of decedent to vest ownership in the surviving joint tenant. The surviving joint tenant in this cause reinforced, rather than eliminated, her rights when she testified that the decedent Mrs. Copp in fact created the tenancy and stated her intention that Linda Jones should have the money in the account.

■■ As the Supreme Court of this State had indicated in *Murgic v. Granite City Trust and Savings Bank*, 31 Ill.2d 587, 202 N.E.2d 470, the instrument creating the joint account under the statutes presumably speaks the whole truth, and, in order to go behind the terms of the agreement, one claiming adversely thereto has the burden of establishing by clear and convincing evidence that the gift was not intended. The court declared there that the burden does not shift to the party claiming as surviving joint tenant. We have indicated in *In re Estate of Dawson, supra,* that the "clear and convincing evidence" referred to was that quantum of proof which leaves no reasonable doubt in the mind of the trier of fact of the truth of the fact in issue. We have given consideration to decedent's age and physical condition, and such inconsistencies and inaccuracies as were pointed out in designating the names and relationship of legatees in her will as well as appellee's act of having relinquished the $53 in the checking account of the estate, and we have also noted the contentions of inconsistency relating to the provisions of decedent's will and the gift of the joint tenancy money. We do not believe that any such matters or anything in the record justifies the contention made by appellant that there was lack of donative intent on the part of decedent, Ellen Copp.

Only three witnesses testified at the citation hearing. One was the appellee who clearly established that there was an intention on the part of decedent to create a joint tenancy and that the surviving joint tenant, Linda Jones, was to have the property. Another witness was decedent's nephew, William Stirrat, who testified that his aunt was in "perfect"

mental condition before she went to the hospital, and that although she declined somewhat at that time, her condition was fair and she did make sense in her conversations and that there was nothing unusual in her condition. It is true that Stirrat stated that at times decedent may have been "delirious" and not "rational" in the judgment of this witness, but he did not relate it to the time of the establishment of the joint tenancy account. Martha Cann testified that she visited decedent once in the hospital and was there a very short time. She remarked that decedent was not very talkative but believes that decedent was under medication at that time. In no case was there any showing of any lack of mental acuity connected in any manner with the time when Mrs. Copp signed the signature card.

It appears that the decedent Mrs. Copp always wrote her own checks and had requested that the $600 be withdrawn for the purpose of paying bills. The obvious arrangement on the basis of the record was that Mrs. Copp intended to establish the interest of Linda Jones in the savings account subject only to her request to make certain withdrawals for the payment of bills as she did with the checking account. There was no inconsistency, therefore, in the act of Linda Jones in turning the balance in the checking account ($53.00) over to the Executor. We see no parallel between this case and the *Schneider* case or the case of *In re Estate of Weaver*, 75 Ill.App.2d 227, 220 N.E.2d 321. The courts, in the cases referred to, correctly required the funds to be placed in the estate because the decedent had created the tenancies there only for sake of convenience and payment of bills and without a donative intent. This was obviously not the situation in the cause before us.

Appellant refers to the banishment of William Stirrat from Mrs. Copp's home as a basis for showing some deterioration of Mrs. Copp's mind. The record, however, seems to indicate that Mrs. Copp objected to drinking on the part of William Stirrat and that this was the reason for his banishment from the home.

■■ The final issue for consideration is whether the circumstance that Linda Jones was in a fiduciary relationship to Mrs. Copp, would operate in any manner to establish that the savings account proceeds should go to the estate. We do not believe that this circumstance requires that Linda Jones be divested of the funds in the joint tenancy savings account.

The case of *In re Estate of Foster*, 104 Ill.App.2d 447, 244 N.E.2d 620, involved facts and issues similar to those in the cause before us. The decedent in that case was approximately 85 years of age and in poor physical health. He signed a joint account card with his grandnephew establishing a bank account in his and the grandnephew's name with

the right of survivorship in the surviving joint tenant. The grandnephew had attended to decedent's every physical need for two years, and also had handled practically all of decedent's business affairs. It was agreed that the grandnephew was in a fiduciary relationship with the decedent. After the death of the granduncle, the administrator of his estate brought a citation proceeding to bring the proceeds of the bank account into Foster's estate. The question was whether Foster's estate or the grandnephew had the burden of proof with respect to the issue of donative intent since the surviving joint tenant was in a fiduciary relationship with the decedent. The court gave close attention to precedents including *In re Estate of La Rue*, 53 Ill.App.2d 467, 203 N.E.2d 47; *Curtis v. Fisher*, 406 Ill. 102, 92 N.E.2d 327, and the case of *Murgic v. Granite City Trust and Savings Bank, supra,* and concluded that the rights of the surviving joint tenant as specified in *Murgic* were such that the burden of proof was not reversed by reason of the fact that there was a fiduciary relationship. The burden of proof still remained with the party asserting the claim that the fund in the account should be the property of the estate of the decedent. The court in the *Foster* case also reasoned that in *Dixon National Bank v. Morris*, 33 Ill.2d 156, 210 N.E.2d 505. the court supported rather than refuted the principles of the *Murgic* case, because the court in the *Dixon National Bank* case merely found that the executor of the decedent had discharged his burden of propounding the clear and convincing proof that the *Murgic* case required. The *Foster* case also pointed out that the administrator supplied no evidence tending to show that the fiduciary relationship was abused or that any confidence reposed in the beneficiary was betrayed.

■■ In applying the foregoing precedents to the case before us, assuming that a fiduciary relationship did in fact exist between Linda Jones and Mrs. Copp, there is no evidence of any kind of suggest that such relationship was abused or that any confidence reposed was ever betrayed. The burden was upon Martha Cann to prove by clear and convincing evidence that the decedent did not sign the signature card with a donative intent, As we have indicated in the course of this discussion in this opinion, the trial judge found that Martha Cann did not discharge that burden. The trial judge, who observed the parties and heard the testimony, was justified in concluding that Mrs. Copp did have the donative intent at the time she signed the signature card. Accordingly, the judgment of the Circuit Court of Will County will be affirmed.

Judgment affirmed.

SCOTT, J., concurs.

Mr. JUSTICE STOUDER dissenting:

I do not agree with the majority of the court.

Generally speaking, I agree that with respect to the usual joint survivorship account, the rule as announced in *Murgic v. Granite City Trust and Savings Bank,* 31 Ill.2d 587, 202 N.E.2d 470, is that from the creation of such an account there is a presumption of donative intent and that the burden is upon the contestant to prove the absence thereof. However I disagree with the opinion of the majority that such rule is applicable or uneffected by the existence of a fiduciary relationship between transferor and transferee when the latter is the dominant party in the relationship.

*Curtis v. Fisher,* 406 Ill. 102, 92 N.E.2d 327, represents one of the more recent of a long line of cases which holds that transfers to the dominant party in a fiduciary relationship are "prima facie voidable" or "presumptively fraudulant". Yet the majority holds on the authority of the *Murgic* case, that there is a presumption of gift even where the purported donee admittedly is the dominant party in a fiduciary relationship with the purported donor. The express intention in the *Murgic* case to stabilize rules in relation to joint survivorship accounts, is referred to as apparently being of overriding importance in any case involving such an account. I submit that such an overriding importance can not be attributed to the *Murgic* case. According to its own terms, it was primarily concerned with modifying or clarifying the pre-existing rule which held that the transferee of a transfer without consideration had the procedural burden of presenting evidence of donative intent. Such a rule as the court pointed out, has developed from that applicable to gifts of tangible personal property where at least the transfer of possession was a significant act. In the case of a joint survivorship account the donee might not even have any knowledge of the transfer and other than the agreement itself the practical means of proving a gift would be unavailable.

Such considerations are not present when the transferee is the dominant party in a fiduciary relationship. To require the party contesting such a gift to establish absence of donative intent is to create an impossible burden contrary to the rationale for imposing the burden of proving fairness upon the fiduciary.

To the extent that *In re Estate of Foster,* 104 Ill.App.2d 447, 244 N.E.2d 620, cited in the majority opinion, suggests that our usual rules relating to fiduciaries are inapplicable, such case is not of persuasive authority. To approve of a fiduciary's right to the proceeds of a joint survivorship account because the contestant has failed to show an abuse of the confidential relationship as was done in the *Foster* case, announces

a new rule fraught with potential mischief. Although the result in the *Foster* case may be right because the donor may have secured independent advice and counsel, such facts are not clear from the opinion and the failure of the court to apply the usual fiduciary rules tends to obscure the validity of the result.

Measured by our usual standards applicable to fiduciaries, no case has been made out establishing the fairness of the transaction as opposed to the presumption that the transaction was fraudulent and *prima facie* voidable. Absent such a showing the court erred in failing to require that the money be turned over to the estate.