Paul E. Graves, Plaintiff-Appellant, v. Rae E. Graves, Otto Graves, Jr., The City National Bank, a National Banking Association, Chicago Heights Savings & Loan Association, a Corporation, Defendants-Appellees.

Gen. No. 11,757.

Second District, Second Division.

September 5, 1963.

Berry & O'Conor, of Streator, for appellant.

Eva L. Minor, of Kankakee, for appellees, Rae E. Graves and Otto Graves, Jr.

CROW, PJ.

This is a suit in equity brought by the plaintiff, Paul E. Graves, against his brother, Rae E. Graves, a defendant, and others, to determine the ownership of certain joint tenancy building and loan accounts which were in the names of Otto H. Graves, their father, and Paul E. Graves and Rae E. Graves, the sons, not as tenants in common but as joint tenants, with the right of survivorship, at the death of the father, Otto H. Graves, on August 28, 1959. After the death of the father the defendant Rae E. Graves, without the knowledge or consent of the plaintiff, withdrew all of the funds and deposited part of them in his own name in a bank account at the defendant bank, and part of them in another building and loan account in his and another brother's name, Otto Graves, Jr., a defendant, in the defendant savings and loan association. The plaintiff seeks a determination that he is the equitable owner of one-half of the funds so withdrawn from the joint accounts without his consent and deposited in the individual name of the defendant Rae E. Graves or in the names of Rae and the other brother Otto, Jr. The trial court entered a Decree, September 28, 1962, in favor of the defendants, holding that the funds so withdrawn by Rae E. Graves from the joint tenancy accounts were the sole and exclusive property of that joint tenant.

The theory of the plaintiff is that the accounts were established by properly executed joint tenancy agreements in the names of the father, Otto H., and the two sons, Paul E. and Rae E. Graves. Prima facie, on the death of Otto H., the accounts passed to the surviving joint tenants, Paul E. and Rae E., in equal shares. When Rae E. Graves appropriated the entire property, without the knowledge or consent of Paul E. Graves, Rae E. is responsible and liable to Paul E. for one half of the accounts, as between the parties.

The theory of the defendants is that the money in the building and loan accounts was the joint property of the father, Otto Graves, deceased, and his son, the defendant Rae E. Graves. There was no intent on the part of either of such owners to make a gift to the plaintiff, Paul E. Graves, of a present interest in either of the accounts. Consequently, the defendant Rae E. Graves had a legal right to withdraw the funds.

On March 1, 1954, a joint tenancy building and loan account, No. 657, was opened in the Chicago Heights Federal Savings and Loan Association, Chicago Heights, Illinois, in the names of Otto H. Graves, Rae E. Graves, and Paul E. Graves, not as tenants in common but as joint tenants, by a deposit of $7,000. A proper joint tenancy agreement was executed by those parties on the signature card of the building and loan association.

On June 3, 1954, Otto H. Graves withdrew the money from that account and placed it in an account in the same building and loan association in the name of Rae E. Graves, individually. At that time Otto H. Graves was having some domestic problem with his wife. This culminated in a divorce April 30, 1956.

On September 7, 1956, Otto H. Graves had his son, Rae E. Graves, go to the building and loan association and have this building and loan account again placed in joint tenancy in the names of Otto H. Graves, Rae E. Graves, and Paul E. Graves, as joint tenants, with

the right of survivorship, and not as tenants in common. This account was designated as No. 666. The account remained in joint tenancy in the names of the father Otto H. Graves, and the two sons, Rae E. Graves, and Paul E. Graves, until after the death of the father, August 28, 1959, and at that time was in the amount of $4,000.

Another joint tenancy account was opened at the Kankakee Federal Savings and Loan Association, Kankakee, Illinois, in the names of Otto H. Graves, Rae E. Graves, and Paul E. Graves, as joint tenants, with the right of survivorship, No. 31070, in the amount of $5,000 on October 5, 1956. On July 3, 1959 an additional $5,000 was deposited in this account, making the total amount of the account $10,000. It remained in joint tenancy in those three names until the death of Otto H. Graves and at the time of his death was in the amount of $10,000.

Another joint tenancy account was opened at Kankakee Federal Savings and Loan Association in the three names, Otto H., Rae E. and Paul E. Graves, as joint tenants, with the right of survivorship, No. 69700, July 7, 1958, with an initial deposit of $3000, and at the time of the decease of Otto H. Graves, the amount thereof was $1105. It had also remained in the three names as joint tenants from its establishment until the decease of Otto H. Graves.

After the decease of the father, the plaintiff Paul E. Graves and the defendant Rae E. Graves, on October 22, 1959, went to the Kankakee etc. Association and signed agreements and signature cards to open a new joint tenancy account in the names of Paul and Rae, as joint tenants, with the right of survivorship, for $10,000 and $1105 (the amounts respectively then in the foregoing accounts No. 31070 and 69700). Later that same day, however, the defendant Rae, alone, withdrew the whole $11,105 and deposited it in an account in his own name only in the defendant City

441

National Bank. Two days later the defendant Rae, alone, at the Chicago Heights etc. Association, withdrew the $4,000 balance in the joint tenancy account there, No. 666, foregoing, and opened another account for that at the same association in his and his other brother, Otto, Jr.'s names, as joint tenants.

The applications and agreements entered into March 1, 1954 and September 7, 1956 between Otto H. Graves, Rae E. Graves, and Paul E. Graves, with the Chicago Heights etc. Association, purporting to be signed by all of those parties, are in evidence, as well as the similar agreements of the parties of October 5, 1956 and July 7, 1958 with the Kankakee etc. Association. In them Rae E. Graves, Otto H. Graves, and Paul E. Graves deposited the respective moneys as joint tenants, with the right of survivorship. The September 7, 1956 agreement further recites, inter alia: "It is agreed by the signatory parties with each other and by the parties with you (Chicago Heights etc. Association), that any funds placed in or added to the account by any one of the parties is and shall be conclusively intended to be a gift at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in the account." That identical language appears in the similar applications and agreements of those parties upon the opening of the other accounts on October 5, 1956 and July 7, 1958, with the Kankakee etc. Association.

The father, Otto H. Graves, conducted a threshing and custom farm work business. Rae and Paul, as they grew up, helped in the business. Paul married and moved away from home. Rae was not married and remained at the father's home. At times Rae worked with his father. He also had other employment. Sometimes, when aiding the father, the customer paid Rae, but Rae always turned over to his father any moneys so received. Rae contributed no capital to the business of his father. No name such as

Otto Graves and Sons was used in the business. There would not have been more than two years in a recent period of years (since about 1952, apparently) that Rae was not regularly employed full time elsewhere than in his father's business. When so employed elsewhere he only did extra work for his father. The father had saved his money, used what he needed for living expenses for himself and Rae, and opened these building and loan accounts with such surplus funds as he had accumulated. There is no evidence of any partnership agreement of any kind, oral or written, between the father and his son, the defendant Rae E. Graves. There is no evidence of any income tax returns indicating any partnership, or any income to Rae from the business. Rae said that throughout his recollection his father was working for himself. The father had earlier put approximately $15,000 in currency from savings of his business in the coal bin in his basement of his home, and the defendant Rae E. Graves had got after him for that. The money was then taken to the building and loan associations, for deposit. When they deposited the money they were told that whoever had the passbook could draw the money. The father and Rae kept the passbooks. The plaintiff, Paul E. Graves, never had possession thereof. Rae drew some money out during his father's lifetime. According to Rae, the father did not say that Paul could withdraw any money. The plaintiff, Paul E. Graves, testified that he did not deposit any of his own money in any of the accounts. The defendant Rae E. Graves testified that he turned over certain money to his father, but the amount thereof was not established, and he never himself took any of that money to the building and loan associations for deposit in the saving accounts, although Rae was sometimes with his father when the father made deposits in the savings accounts. Rae did not know whether any of his earnings from his other regular employ-

ments were put into any of these savings accounts. Rae said the money he gave his father at various times was put in the father's billfold and Rae did not know what his father did with it then.

At the time of the original creation, March 1, 1954, of the first joint tenancy account, No. 657, at Chicago etc. Association, the joint rights and obligations statute, Ill Rev Stats 1953, c 76, § 2, had abolished the right or incident of survivorship as between joint tenants or owners of personal property, but had expressly excepted instances, inter alia, where an instrument in writing expressed an intention to create a joint tenancy in personal property with the right of survivorship, and had also provided that the abolition of the right or incident of survivorship should not impair or affect the rights, privileges, and immunities, inter alia, as to shares or evidence of interest issued in the joint names of two or more persons or their survivors by savings and loan associations, and when an agreement permitting payments on account thereof or delivery thereof to any of such persons was signed by all such persons at the time when the shares or evidence of interest were issued the payment or delivery to any such person was to be a valid and sufficient release and discharge of the association. And at that time a special statute relating to savings and loan associations, Ill Rev Stats 1953, c 32, § 255f, particularly provided, inter alia, that any savings and loan association may issue shares, share accounts, or accounts in the joint names of two or more persons or their survivor.

At the time of the creation, September 7, 1956, of the next joint tenancy account, No. 666, at that association, and at the time of the creation, October 5, 1956, of the joint tenancy account, No. 31070, at the Kankakee etc. Association, the same statutes, so far as relevant, were in effect: Ill Rev Stats 1955, c 76, § 2, and Ill Rev Stats 1955, c 32, § 952.

444

And at the time of the creation, July 7, 1958, of the last joint tenancy account, No. 69700, at the Kankakee etc. Association, the same statutes, so far as relevant, were in effect: Ill Rev Stats 1957, c 76, § 2, and Ill Rev Stats 1957, c 32, § 952.

In addition, the Illinois Savings and Loan Act of July 5, 1955, Ill Rev Stats 1955, and 1957, c 32, § 770, provided, inter alia, if two or more persons opening or holding an account shall execute a written agreement with the Association providing that the account shall be payable to any or the survivor of them, the account, and any balance existing from time to time, shall be held by them as joint owners with right of survivorship.

The concept of survivorship with respect to personal property has grown until it has become an established fact of present day life. The legislature has recognized the realities of the situation by enacting statutory provisions relative to joint accounts in savings and loan associations in the names of two or more persons as joint owners with the right of survivorship. The foregoing statutes provide, inter alia, a statutory method by which a right of survivorship in these accounts could be created as between the parties themselves.

The various written documents here, of March 1, 1954, September 7, 1956, October 5, 1956, and July 7, 1958 constituted agreements between the associations and the signers and between the signers themselves by which the survivor or survivors was or were to take title by contract or gift. It is necessary that such an agreement be in writing and be signed by the parties in order to create rights of survivorship in the account, and that was complied with here.

■ The legal, as differentiated from the equitable, title is vested thereby in the holders of such accounts, with the right of survivorship, by force of the statutes, and compliance with the appropriate statutory

445

requirements dispenses with the necessity of applying common law principles governing the creation of joint tenancies as such. The relationship so established by a joint savings and loan account is not really that of joint tenancy, as such, but rather is one which is governed by the provisions of the agreement between the association and the depositors and the provisions of the foregoing statutes. The subject of the gift is not really the funds on deposit in the account, but rather an interest in the account, or a power to deal with the funds on deposit.

■ ■ A court of equity, though, is not foreclosed from looking behind the form of the transaction and determining the real, beneficial interest or interests as between the parties themselves. The written deposit agreements, however, tend to show a donative intent on the part of the original owner of the funds, and are sufficient to establish ownership in the survivor or survivors by virtue of the contracts and by virtue of the statutes upon the death of one of the depositors, in the absence of evidence to the contrary. Such deposit agreements are presumptive evidence of a donative intent and are effective unless the donative intent is disproved by other evidence,—proof of the agreements made a prima facie case for the plaintiff here.

■ In this case there is a presumption that the taking or placing of title by the father in himself and his two sons was, as to the sons, a gift or advancement, and the burden is upon the defendants questioning the gift to overcome that presumption by clear and convincing proof. There is a further presumption of acceptance of a gift beneficial to the donee sons. Beyond that, in this particular case, the agreements of the parties specifically provided, in addition to the normal joint owners language, that "any funds placed in or added to the account by any one of the parties is and shall be conclusively intended

446

to be a gift at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in the account." That must have meant that the father, who was the sole party furnishing any money for these accounts, so far as the record indicates, intended, not only presumptively, but expressly, to make a gift proportionately at the time of the funds to his two sons pro rata.

Evidence tending to rebut the presumption of donative intent is meagre here. It is short of the clear and convincing proof necessary to rebut the presumption of donative intent.

Beyond that, we think the record, in addition to the agreements themselves, tends affirmatively to show the father intended to make gifts to his sons through these survivorship arrangements. The establishment of these accounts began March 1, 1954, more than five years before the father's decease. For all those years and until his decease, August 28, 1959, they were and remained of record as joint ownership accounts in the three names from their respective dates of creation, except for the period as to one account when the father placed it in Rae's name only during a time the father had a domestic problem. That particular account, after resolution of the domestic problem, was again restored to and placed in the three names as joint owners. It was not left in Rae's name only, or put in the father and Rae's name. It was restored to all three names. Considering all the accounts together, there were very few, if any, overall withdrawals. There is no substantial evidence they were so established merely for convenience in making withdrawals. In addition, it is not without significance that the defendant Rae joined with the plaintiff, Paul, after the father's decease in initiating steps to open a new joint account in both their names for the amounts formerly in two of these accounts at the Kankakee

447

etc. Association,—which would seem to indicate Rae at that time considered Paul to be a joint owner with him thereof.

In addition to donative intent to make inter vivos gifts, however, in order that such be consummated the donor father must have parted with exclusive dominion and control over the subject of the gifts, and there must be delivery. The decedent father here surrendered his exclusive right to the several accounts when he voluntarily placed ownership in himself and his sons. Each of the co-owners had an equal right to possession of the evidence of title,—the passbooks, —and since they could not all have manual possession of such at the same time, possession by one was possession for the benefit of all. Delivery to one is delivery for the benefit of all, and the requirement of delivery is satisfied where, as here, there is donative intent.

See: Frey v. Wubbena (1962) 26 Ill2d 62, 185 NE2d 850, decided September 28, 1962, the same date the decree was entered here; cf. In the Matter of the Estate of Edward Schneider (1955) 6 Ill2d 180, 127 NE2d 445; In the Matter of the Estate of Martin Mueth, Deceased (1962) 33 Ill App2d 449, 179 NE2d 695; In the Matter of the Estate of Henry W. Fitterer, Deceased (1960) 27 Ill App2d 264, 169 NE2d 578; In the Matter of the Estate of Domenick Deskovic, Deceased (1959) 21 Ill App2d 209, 157 NE2d 769.

With regard to In the Matter of the Estate of Edward Schneider (1955) 6 Ill2d 180, 127 NE2d 445, referred to by the defendants (and by the plaintiff) we have incorporated its applicable principles in what we have previously said, but factually it was quite different from the case at bar inasmuch as there the original owner (now deceased) of the funds put in the savings and loan account was completely unrelated in any degree to the other (surviving) joint owner, there was no such language in the agreement relating

448

to the account as was present here and which we've heretofore quoted, and the decedent original owner had said to the surviving joint owner when they went to the savings and loan association "I want your name on these bank accounts so that in case I am sick you can go and get the money for me." In Scanlon v. Scanlon (1955) 6 Ill2d 224, 127 NE2d 435, referred to by the defendants, the facts were much different from those here present, though the result, that the defendant wife, joint owner with her husband, the plaintiff, of a savings account, should in equity account to the plaintiff for one half of the money she withdrew from their account, they both being living, is consonant with the result we believed must be reached here. Schramm v. Schramm (1958) 13 Ill2d 281, 148 NE2d 799 and Penrod v. Smith (1956) 9 Ill App2d 257, 132 NE2d 675, referred to by the defendants, appear entirely unrelated to the present case. In In the Matter of the Estate of Esther G. Cronholm, Deceased (1962) 38 Ill App2d 141, 186 NE2d 534, also referred to by the defendants, the facts, again, were greatly variant from those here presented,—there the original owner (deceased) of the funds put in the savings accounts was wholly unrelated in any degree to the other, surviving, joint owner, there was no language in the agreement as to the account like was present here, which we've heretofore referred to, there was evidence of the decedent's intent to pass the accounts under her will as a part of her estate and not by virtue of any joint ownership agreement, and the surviving joint owner at first made no claim to the accounts on the decedent's decease and evidently considered the true ownership to be in the decedent's estate.

The joint rights and obligations statute, Ill Rev Stats 1961, c 76, § 4, provides, in part, that if any person shall assume and exercise exclusive ownership over, or take away, any property held in joint tenancy or tenancy in common, the party aggrieved shall

have his civil action for the injury in the same manner as he would have if such joint tenancy or tenancy in common did not exist. The statute includes and applies to personalty: 23 ILP, pp 80–81. There seems to be no disagreement on that principle.

We hold that, under the circumstances, on this record, these accounts are, as between the parties, the property of Paul E. Graves and Rae E. Graves equally, and that the defendant Rae E. Graves should be required to account to the plaintiff for one-half of the monies withdrawn by him from the accounts and deposited in the defendant City National Bank of Kankakee in his individual name or in the defendant Chicago Heights Savings and Loan Association in his name and his other brother, Otto Graves, Jr.'s name, as joint owners, with any subsequent increase therefrom, and the defendant Otto Graves, Jr. is jointly and severally similarly also accountable to the plaintiff for one-half of the part deposited in the Chicago Heights etc. Association in the names of Paul E. Graves and Otto Graves, Jr.

The decree is reversed and the cause remanded with directions to enter a decree in accordance herewith.

Reversed and remanded.

WRIGHT and SPIVEY, JJ, concur.