*In re* ESTATE OF REV. JOSEPH J. TAGGART, DECEASED.

(No. 73-114;

Fifth District—November 14, 1973.

Edward F. Casey, of Casey and Casey, of Springfield, and Bland Williamson, of Pray, Scott & Livingston, of Tulsa, Oklahoma, for appellant.

Edward R. OMalley, of Belleville, William J. Dieterich, of Quincy, Gary R. Dillinger, of Ridgeway, Decker & Dillinger, of Murphysboro, and Robert A. Wulff, of Holtkamp and Amelung, of St. Louis, Missouri, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This action was commenced by the Executor of the Last Will and Testament of Rev. Joseph J. Taggart, Deceased, to construe a legacy to the decedent's niece, Helen Taggart Pellegrini. The Circuit Court of Jackson County entered its order finding Mrs. Pellegrini to be entitled only to the funds on deposit in a certain joint account, plus interest, at the time of the decedent's death. (The decedent shall hereinafter be called Father Taggart.) From the order of the trial court this appeal has been taken by Mrs. Pellegrini.

The clause in question and to be construed is the Fifth Clause of Father Taggart's Last Will and Testament, which reads:

"*FIFTH:* I give and bequeath to my niece, Helen Pellegrini, all my interest in the joint bank accounts which I have with my niece in The City National Bank of Murphysboro, Illinois."

The Will was executed on June 15, 1964. Father Taggart died on December 3, 1968.

The account in the City National Bank of Murphysboro, hereinafter referred to as the "Bank", was opened in 1953. The decedent and Mrs. Pellegrini, the respondent, had signed a signature card stating that the account was in joint tenancy with right of survivorship.

The Bank's records show that there was only one "joint tenancy" account with an original deposit of $3307.18, and that numerous deposits were made into the account by Father Taggart from the date of its opening until the date of Father Taggart's death. There were but two withdrawals made during the same period. The first withdrawal was made on July 21, 1965, in the amount of $754.55. The second withdrawal was made on September 29, 1967, and was in the amount of $25,000. With the proceeds of the second withdrawal, Father Taggart purchased a time certificate of deposit in his name alone. It is this withdrawal and time certificate of deposit which are the cause of the present dispute.

At the date of Father Taggart's death, he owned six of the Bank's

certificates of deposits with an aggregate amount in excess of $97,000; his total estate was in excess of $337,000.

On the date of the execution of his will, there was a balance of approximately $7600 in the joint account at the Bank. On the date of his death, there was a balance of $13,026.21 in the joint account. Between the two aforesaid dates, the account grew to an amount of $28,907.18, immediately prior to the $25,000 withdrawal and was then built up to the level that it attained on the date of his death.

There is no contention made that the respondent placed any funds into the account nor that she withdrew funds from the account.

At a hearing on the Executor's petition to construe the clause, the Executor and Mrs. Pellegrini testified. The Executor, Mr. Carl McCord, was President of the Bank and was the individual who effected the withdrawal of the $25,000 from the account and used the funds to purchase the time certificate at Father Taggart's direction. Mr. McCord testified that he had known Father Taggart for about 35 years. Then concerning the circumstances surrounding the withdrawal of the funds, he testified that he had been directed by Father Taggart to withdraw the funds and purchase the time certificate so that the funds could earn more interest. At the time of the withdrawal, Father Taggart was residing in the Regina Cleri Home in St. Louis and Mr. McCord had visited him there. Mr. McCord further testified that Father Taggart made no mention of putting the funds into a time certificate jointly with Mrs. Pellegrini, but instructed Mr. McCord to put the time certificate "in his name alone like the rest of them." Mr. McCord also testified that Father Taggart did not sign a withdrawal slip but that the time certificate was endorsed by Father Taggart when the certificate was subsequently renewed.

Mrs. Pellegrini testified that she had been raised by Father Taggart from age four until she entered nurses training at age 17 or 18. Father Taggart then lived with Mrs. Pellegrini at her home in Tulsa, Oklahoma for a period of about nine months during the years 1965-1966 and then returned on visits twice after leaving the Pellegrini's home to live in the Regina Cleri in St. Louis. She further testified that she was vaguely aware of the existence of the joint account but she couldn't readily recall signing the signature card and that she never made any deposits or withdrawals to or from the account.

At the conclusion of the hearing the court allowed counsel to file a "memorandum of authority and argument", response and reply thereto.

The court after considering the evidence and the supporting briefs, responses and reply entered its decree, holding that the respondent was entitled to the proceeds of the joint account and that respondent had no

interest in the $25,000 which was used to purchase the time certificate. From this order this appeal has been brought.

The respondent appellant contends that the court erred in ruling that she was only entitled to the amounts actually on deposit in the joint account and in rejecting her claim to the time certificate purchased with the funds transferred from the joint account.

The appellant first asserts that funds taken from a joint tenancy account exceeding the value or moiety of the withdrawing depositor retain their character as property held in joint tenancy with right of survivorship. She argues that upon the deposit of funds in a joint account there is a presumption that a present gift to the donee occurs, and further that this presumption can only be overcome by clear and convincing evidence that no gift was in fact intended. (*Dixon National Bank v. Morris*, 33 Ill.2d 156, 210 N.E.2d 505; *Murgic v. Granite City Trust and Savings Bank*, 31 Ill.2d 587, 202 N.E.2d 470.) The case *In re Estate of Stang*, 71 Ill.App.2d 314, 218 N.E.2d 854, is cited by the appellant as supportive of her argument. The facts of that case involve a deceased bachelor who died survived by various relatives including his brother and a niece. The decedent had placed two bank accounts and 63 shares of General Motors stock in joint tenancy with his brother. Upon the decedent's demise, there was discovered what purported to be a holographic will which provided that the decedent's money, cash and General Motors shares were to be distributed in a certain manner. The court held that the "will" was not sufficient to rebut the presumption of a donative intent at the time of the creation of the joint tenancies. The brother was thus allowed to keep the assets that were in joint tenancy.

The question here involved is the converse of the question in *In re Estate of Stang, supra*. The question is not the effect of the creation of the joint account and the subsequent making of a will, the provisions of which indicated an intent different from that of the testator at the time he created the joint account; but the question here has to do with the consequences of the withdrawal of a portion of a joint account by one of the joint tenants, in the absence of any showing of fraud, overreaching misrepresentation or any type of wrongdoing on the part of the withdrawing joint tenant.

■■ It is well established that upon the creation of a joint tenancy interest, each of the joint tenants possesses a present estate in the assets comprising the joint tenancy and each joint tenant is seized of the whole interest. (*Kane v. Johnson*, 397 Ill. 112, 73 N.E.2d 321.) This common law principle has been further refined in regard to joint bank accounts by the legislature in Ill. Rev. Stat., ch. 76, par. 2(a) as follows:

"(a) When a deposit in any bank or trust company transacting

business in this State has been made or shall hereinafter be made in the names of two or more persons payable to them when the account is opened or thereafter, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all said persons at the time the account is opened or thereafter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made * * * ."

Although the above cited statute has been labeled a "Bank protection statute", it has been construed as doing more than merely protecting a bank by providing a method of creating an effective joint account between the tenants, as well as between the tenants and the bank. *In re Vollmer's Estate* (1963), 45 Ill.App.2d 94, 195 N.E.2d 44; *In re Estate of White* (1972), 4 Ill.App.3d 505, 282 N.E.2d 235.

■■ When one depositor places funds in a joint bank account, the presumption arises that such act was performed with donative intent. This presumption can be overcome by means of clear and convincing evidence that no gift was in fact intended, *Murgic v. Granite City Trust and Savings Bank* (1964), 31 Ill.2d 587, 202 N.E.2d 470; *Dixon National Bank v. Morris* (1965), 33 Ill.2d 156, 210 N.E.2d 205.

The Supreme Court of Illinois in the case of *In re Estate of Schneider* (1955), 6 Ill.2d 180, 127 N.E.2d 445, adopted the "gift theory" as regards joint bank accounts. It was held in that case that a deposit agreement sufficiently exhibited donative intent to establish ownership in the *survivor*, although evidence could be introduced to establish a contrary intention by the depositor.

■■ However, assuming that donative intent is established, there are basically two implications. First, it creates a present interest in the joint account which amounts to a power to deal with the funds on deposit (*i.e.*, a present right of appropriation). Secondly, it entitles the surviving joint tenant to the proceeds in the account as of the date of death of the deceased joint tenant. *Murgic v. Granite City Trust and Savings Bank* (1964), 31 Ill.2d 587, 202 N.E.2d 470; *Graves v. Graves* (1963), 42 Ill. App.2d 438, 192 N.E.2d 616.

In the case of *Medeiro's v. Cotta*, 134 Cal.App.2d 452, 286 P.2d 546, the California court was confronted with a construction of a statute similar to the one in Illinois at Ill. Rev. Stat., ch. 76, par. 2(a). The court focused in on the two above mentioned presumptions arising from a showing of donative intent:

"* * * the legislation referred to, as it existed when the trans-

actions here in question occurred has been construed by the courts of this state as setting up two presumptions: First, that a deposit in the names of the depositor and other person in form to be paid to either or the survivor of them becomes the property of such a persons as joint tenants. This presumption is not conclusive and may be overcome by proof that the owner depositor when making the deposit had no intention to create a true joint tenancy. The second presumption that in the absence of fraud or undue influence it was the intention of the depositors to vest title in the survivor, is, however, conclusive. In order that the conclusive presumption may be applicable there must be a survivor, and even then the presumption applies only in favor of the survivor as to *moneys still remaining in the account at the time of death. It does not apply in respect of money withdrawn by either of the depositors during life even if one of the depositors has subsequently died.*" 286 P.2d at 548. (Emphasis added.)

The appellant argues that once donative intent is established by the act of creating a joint bank account, an immediate gift vests in the nondepositing joint tenant and the depositing joint tenant has sacrificed all control over the funds so deposited which exceed the depositors so called "moiety". There is no Illinois authority to support such a proposition.

Most cases dealing with donative intent fall in the same general factual pattern. One depositor furnishes all of the funds deposited and both joint depositors sign an agreement with the bank reciting that the account is owned by the two depositors as joint tenants with rights of survivorship. Then upon the death of the depositor of all the funds, his estate and the survivor both claim the balance in the account remaining at death, with the survivor alleging that donative intent existed at the date of creation and the estate alleging that there was no donative intent and hence no right of survivorship.

That same general factual situation exists in this case, except that Mrs. Pellegrini is attempting to extend her interest at the date of Father Taggart's death beyond her survivorship rights based solely on the existence of a joint bank account and nothing more. As surviving joint tenant she is entitled only to the balance as of the date of death.

■■ A joint tenant who has been the victim of any type of wrongdoing by act of the other joint tenant as regards the property held in joint tenancy has a civil right of action by virtue of Ill. Rev. Stat., ch. 76, par. 4. That statute provides as follows:

"If any person shall assume and exercise exclusive ownership over, or take away, destroy, lessen in value, or otherwise injure or abuse any property held in joint tenancy or tenancy in common,

the party aggrieved shall have his civil action for the injury in the same manner as he would have if such joint tenancy or tenancy in common did not exist."

The statute, clearly by its language, requires that the suing party be "aggrieved" by a *wrongful act* of another joint tenant. There is no basis in the record for any allegation by Mrs. Pellegrini that Father Taggart committed a fraud, misrepresentation, or, in any way, dealt unfairly with Mrs. Pellegrini.

■■ It is a matter of record that Mrs. Pellegrini was only vaguely familiar with this account and made no deposits or withdrawals. Based on those facts, Mrs. Pellegrini could not seek to "trace" any joint tenancy interest into the time certificate. Should such a decision be rendered, a joint bank account would lose much of its meaning and utility. A joint depositor could not withdraw all or part of the balance without being confronted with the possibility of lawsuit by the other joint depositor by simply showing the withdrawal and nothing more. To so hold "would tend to make every joint tenancy account suspect and would promote instability rather than stability of ownership", which according to *Murgic* would be an undesirable result.

In *Winters v. Parks* (Fla. 1956), 91 So.2d 649, the Florida Court refused to give a surviving spouse an accounting as to all properties, mortgages and other investments acquired by her deceased husband with funds withdrawn out of a joint bank account. The Court ruled that there was not a sufficient showing of any intentional fraud or wrongdoing to trace the withdrawn funds into the properties purchased. For a similar result see *In re Whiteside's Estate*, 159 Neb. 362, 67 N.W.2d 141.

■■ The appellant concludes that when a joint depositor withdraws greater than one half of the funds deposited in a joint bank account he has "wronged" the other joint depositor. This conclusion is not supported by the law of Illinois. Quite to the contrary, Ill. Rev. Stat., ch. 76, par. 2(a), cited in full above, expressly authorizes a withdrawal of all or part of the deposited funds; to rule otherwise would fly in the face of the entire theory of joint tenancy and common banking practice. We conclude that a withdrawing joint tenant in the absence of fraud, misrepresentation, overreaching or some type of wrongdoing and in the absence of some special agreement between the tenants is not legally accountable to the other joint tenant or tenants for funds so withdrawn, nor, after such withdrawing joint tenant's demise, are his personal representatives or beneficiaries.

The appellant urges that funds in a joint saving account cannot be legally and effectively removed from such account except upon the

approval and signatures prescribed in the depositor's agreement with the bank.

A bank cannot legally "disburse" funds except upon the presentation of the signatures it has been instructed to be necessary. *Miller v. First Granite City Bank*, 349 Ill.App. 347, 110 N.E.2d 651, is cited by the appellant in support of her position as the court stated "A bank cannot legally pay out funds except upon the approval and signature it has been instructed is necessary." The *Miller* case involved a suit by some 361 plaintiffs against the bank to obtain funds deposited there by a union. None of the plaintiffs' signatures appeared on any signature cards and there was no showing that the plaintiffs were entitled to the funds upon deposit thus the dismissal by the trial court was affirmed by the Appellate Court. This case is distinguishable from the present case in two particulars; first, there is no proof that Mr. McCord was not in fact authorized by the decedent to "transfer" funds to another account and, second, there is proof that the decedent ratified the act of transferring the funds by his subsequent renewal of the time certificate.

The statute on Joint Rights and Obligations in Bank Accounts (Ill. Rev. Stat. 1971, ch. 76, sec. 2(a)), sets forth the basic requirements for payments by a bank. That statute provides in pertinent part, as follows:

> "* * * such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons * * * and when an agreement permitting such payment is signed by all said persons at the time acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made."

Here we know that a signature card was signed by both Father Taggart and Mrs. Pellegrini establishing the joint account with right of survivorship. No additional agreement was presented by the Bank or disclosed by the testimony of Mrs. Pellegrini which would have limited or restricted the right of Father Taggart to make withdrawals.

■■ The delivery of the time certificate to Father Taggart and his acceptance thereof constituted a "receipt or acquittance", amounting to a record of the transaction. These facts are adequate to establish a ratification by Father Taggart of what he initially directed Mr. McCord to perform.

As her final contention the appellant asserts that the will must be construed to give effect to all language therein and any ambiguities should be resolved in favor of an heir in preference to a person not so closely related. For this assertion to be correct there must first be an ambiguity. We do not find such ambiguity.

██ Father Taggart after making numerous specific bequests to individuals who were men of the cloth, made provisions for Mrs. Pellegrini, then left the remainder of his substantial estate equally to five separate church and charitable institutions. These bequests are not out of character for a man who spent more than sixty years as a priest. Whereas it is true that the courts prefer the construction of a will that more closely follows the statute of descent (*Continental Illinois National Bank & Trust Co. of Chicago v. Llewellyn*, 67 Ill.App.2d 171, 214 N.E.2d 471; *Peoples Bank of Bloomington v. Hoffman*, 403 Ill. 463, 86 N.E.2d 185), we agree with the court below in finding the clause in question is not ambiguous. (*Gridley v. Gridley*, 399 Ill. 215, 77 N.E.2d 146; *Cahill v. Cahill*, 402 Ill. 416, 84 N.E.2d 380.) The will speaks as of the date of death of the testator. *Lydich v. Tate*, 380 Ill. 616, 44 N.E.2d 583.

The judgment is affirmed.

G. MORAN and JONES, JJ., concur.