T.C. Memo. 2011-299

UNITED STATES TAX COURT

ESTATE OF RUDOLPH MORAGNE, A DISABLED PERSON, DONNA MORAGNE AND
ELAINE MORAGNE, LIMITED GUARDIANS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 22013-07, 3772-08L.  Filed December 27, 2011.

<u>Rufus Lynwood Cook</u>, for petitioner.

<u>Brett A. Saltzman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $152,876[1] deficiency

in the Federal income tax of petitioner for 2004 and a $33,305.63

---

[1]Respondent amended his answer to seek the increased amounts
reflected in this opinion as respondent was unaware, at the time
he issued the deficiency notice, that Dr. Moragne had sold his
principal residence during 2004 and had received net taxable
proceeds exceeding the exclusion amount under sec. 121.

addition to tax under section 6651(a)(1)[2] for filing a delinquent return (late filing additions), a $37,006.25 addition to tax under section 6651(a)(2) for failing to pay the tax timely (late payment additions) and a $1,829 section 6654 addition to tax for failing to pay estimated taxes (estimated tax additions) regarding 2004.  As to 2002, respondent issued a determination notice on January 7, 2008, sustaining the filing of a notice of Federal tax lien regarding the approximate $50,000[3] unpaid tax liability for 2002 that included a late filing addition, a late payment addition and an estimated tax addition.[4]

After concessions, there are four issues for decision.  The first issue is whether petitioner may deduct a theft loss under section 165 for amounts or property held mostly in joint tenancy that Dr. Rudolph Moragne's (Dr. Moragne, a former doctor) then wife used or transferred.  We hold that petitioner is not

---

[2]All section references are to the Internal Revenue Code for 2004 (regarding the deficiency case) and 2002 (regarding the collection action), and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[3]Amounts are rounded to the nearest dollar.

[4]The parties agree that the underlying liability for 2002 is properly at issue.  Petitioner failed, however, to present any evidence or raise any argument in briefs regarding whether respondent abused his discretion in sustaining the collection action at docket no. 3772-08L.  Petitioner also failed to raise this issue in the petition.  This issue is therefore deemed conceded.  See Rules 34(b)(4), 149(b).  We review the underlying tax liability for 2002 de novo.  See Sego v. Commissioner, 114 T.C. 604, 610 (2000).

entitled to a theft loss deduction for either 2002 or 2004. We must also decide whether petitioner is liable for the late filing additions, the late payment additions and the estimated tax additions for 2002 and 2004. We hold petitioner liable.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated by this reference. Dr. Moragne resided in Illinois at the time the petitions were filed.

Dr. Moragne was married and had three daughters[5] early in his medical practice as a public health physician. Dr. Moragne divorced his first wife. In his late 60's, he had two surgeries (a neck surgery and a back surgery) that curtailed his ability to practice medicine. In 1997 he enlisted the help of a former nurse and friend Mary Branch (Ms. Branch) to assist him in tending to his personal needs. Dr. Moragne's daughters were unable to assist him. One daughter lived in Washington, D.C., one lived in Tennessee and another was unable to assist her father even though she lived in Chicago.[6] Ms. Branch visited Dr. Moragne about once a week. Dr. Moragne was depressed and

---

[5]The record is unclear as to the number of daughters Dr. Moragne had. No daughter testified nor did the ex-wife. The parties sometimes referred to the ex-wife as a daughter and vice versa. This discrepancy does not affect our holdings.

[6]See _supra_ note 5.

disinterested in his financial affairs.  Ms. Branch assisted Dr. Moragne in his financial affairs, and he allowed her to write checks from his checkbook to pay his bills and mortgages.

Dr. Moragne married Loretta Hill (Loretta) on October 7, 2000.  Shortly thereafter, Dr. Moragne asked Ms. Branch to turn over his checkbook to his new wife, Loretta, who would have check writing responsibilities and general responsibility over his financial affairs going forward.  Dr. Moragne arranged with his bank for Loretta to have check writing authority and authorized her to make various payments on his behalf as Ms. Branch had been authorized previously.  The bills that Ms. Branch had paid on Dr. Moragne's behalf still needed to be paid after Dr. Moragne married Loretta.

Ms. Branch did not know Loretta, she never met Loretta, and she had no personal knowledge of anything that occurred during Dr. Moragne's marriage to Loretta from October 2000 through January 2005.  She did not have any contact with Dr. Moragne from the time he married Loretta until after the years at issue.

Dr. Moragne and Loretta remained married throughout the years at issue.  In fact, they remained married until 2007 after a 7-year marriage.

Dr. Moragne solely owned a residence at 5036 S. Ellis Street in Chicago, Illinois (the Ellis property) before he married Loretta.  In late 2004 the Ellis property was sold and $450,000

of net proceeds received. Some of the proceeds from the sale of the Ellis property were used to purchase a residence at 15 Graymoor Lane in Olympia Fields, Illinois for $425,000 (the Graymoor property). Title to the Graymoor property was placed in Loretta's name only. Loretta took out a home equity line of credit of $250,000 on the Graymoor property.

Dr. Moragne maintained a joint checking account with Loretta at Shorebank. The bank statements reflect that $12,500 was paid for a Jaguar in 2004. Loretta wrote a check on the joint account to herself for $26,000 on June 9, 2004. She also wrote a check on the joint account made payable to cash for $50,015 on October 29, 2004 and wrote a check for $15,000 to Dr. Moragne and herself on December 13, 2004, that both Dr. Moragne and Loretta endorsed.[7] In addition, Loretta wrote a check for $413,000 made payable to Dr. Moragne and herself on December 9, 2004. Again, Dr. Moragne and Loretta each endorsed the check.

After the years at issue, on October 5, 2005, the Circuit Court of Cook County, Probate Division, Case No. 05 P 6274, entered an order appointing Dr. Moragne's daughter and his ex-wife as limited co-guardians of his estate. Per the order, Dr. Moragne specifically retained the authority to manage his own ordinary affairs and was able to handle his financial affairs

[7]The record contains bank statements for 2005 and checks drawn in 2005, yet that year is not before us.

including expending his own retirement income and paying utility bills, condominium assessments and the like up to $5,000.

The probate court did not adjudicate Dr. Moragne an incompetent.  Instead, the probate court specifically declined to appoint the daughters as plenary co-guardians after reviewing all the evidence produced in the probate proceedings.

Dr. Moragne, through his counsel, filed a verified petition for dissolution of marriage on December 2, 2005.  Sometime thereafter, Dr. Moragne's counsel and his limited co-guardians concluded that Loretta's activities constituted theft.

The Circuit Court of Cook County, Domestic Relations Division, Case No. 05 D 12787, entered a stipulated Judgment of Dissolution dissolving Dr. Moragne and Loretta's marriage in December 2007.  Dr. Moragne was competent to testify during the course of his divorce proceedings during 2007.

The stipulated Judgment of Dissolution ordered the return to Dr. Moragne of all real property owned by him and Loretta during their marriage, whether jointly or individually, including the proceeds therefrom.  The stipulated Judgment of Dissolution also ordered that Loretta retain all real and personal property then presently titled in her name.

Proceeds of $92,800 from the sale of the Graymoor property and proceeds of approximately $160,000 from the sale of a condominium at 1640 E. 50th Street held in joint tenancy by Dr.

Moragne and Loretta were placed in escrow pending resolution of the divorce proceeding and subsequently distributed to Dr. Moragne's estate upon dissolution of the marriage.

Sometime in early 2010 Dr. Moragne's limited co-guardians, through their counsel, provided respondent's counsel with completed Federal income tax returns for Dr. Moragne for 2002 and 2004, signed by petitioner's limited co-guardians. Respondent has accepted the returns filed except for the claimed theft loss in each year. The returns reflect a claimed $319,569[8] theft loss for 2002 and a claimed $384,540 theft loss for 2004.

## OPINION

Petitioner contends it is entitled to deduct theft losses for 2002 and 2004 because Loretta stole from Dr. Moragne property that they held in joint tenancy. We are asked to decide whether the claimed theft losses are allowable. We are also asked to decide whether petitioner is liable for the late filing additions, the late payment additions and the estimated tax additions.

## Burden of Proof

We begin with the burden of proof. Generally, the Commissioner's determinations in a deficiency notice are presumed correct, and the taxpayer has the burden of proving the

---

[8]No credible evidence was presented as to 2002. Petitioner's arguments do not constitute facts.

Commissioner's determinations to be in error.  Rule 142(a)(1);
Welch v. Helvering, 290 U.S. 111 (1933).  The burden of proof may
shift to the Commissioner in certain circumstances, however, if
the taxpayer introduces credible evidence and establishes that he
or she substantiated items, maintained required records and fully
cooperated with the Commissioner's reasonable requests.  Sec.
7491(a)(1) and (2)(A) and (B).  We find that petitioner failed to
provide credible evidence and failed to substantiate the claimed
theft losses for 2004.  The burden of proof therefore remains on
petitioner.  In addition, the Court reviews any determination
regarding the underlying liability de novo if a taxpayer's
underlying liability is properly at issue.  Sego v. Commissioner,
114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176,
181-182 (2000).  Petitioner's 2002 tax liability is properly at
issue.  We therefore review it de novo.

Theft Loss

     We turn next to whether petitioner is entitled to deduct
under section 165 for either taxable year 2002 or 2004 the
alleged theft loss.  A deduction is allowed for any loss
sustained during a taxable year and not compensated for by
insurance or otherwise.  Sec. 165(a).  The deduction is limited
in the case of an individual to, among other things, a loss that
arises from theft.  Sec. 165(c)(3).

A theft loss is sustained during the taxable year in which a taxpayer discovers it. Sec. 165(e); Marine v. Commissioner, 92 T.C. 958, 976 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991). Moreover, if there is a reasonable prospect of recovery at the end of the taxable year, then there is no closed and completed transaction for which a theft loss deduction is allowable. Viehweg v. Commissioner, 90 T.C. 1248, 1255-1256 (1988). A reasonable prospect of recovery exists when the taxpayer has a bona fide claim for recoupment and there is a substantial possibility that the claim will be decided favorably for the taxpayer. Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795, 811 (1974), affd. 521 F.2d 786 (4th Cir. 1975). Whether a reasonable prospect of recovery exists is determined as of the end of the taxable year for which the deduction is claimed. Id.

Petitioner bears the burden of proving that the alleged theft losses occurred and that the requirements of section 165 have been met. Allen v. Commissioner, 16 T.C. 163, 166-167 (1951). Petitioner must establish to carry this burden both the occurrence of the thefts within the meaning of section 165 and the amounts of the claimed theft losses. See Rule 142(a); Elliott v. Commissioner, 40 T.C. 304, 311 (1963). Whether certain actions constitute theft for purposes of section 165 depends on the law defining the crime of theft in the jurisdiction where the alleged theft occurred. Edwards v.

Bromberg, 232 F.2d 107, 111 (5th Cir. 1956); Monteleone v. Commissioner, 34 T.C. 688, 692 (1960).

Petitioner argues that Loretta stole money from Dr. Moragne and therefore petitioner is entitled to theft losses for both 2002 and 2004. Respondent counters that no theft occurred under Illinois law and petitioner has failed to establish the amount of the loss for either 2002 or 2004. Alternatively, respondent argues that, even if a theft occurred, no deduction may be claimed until the year of discovery (2005, at the earliest), and then only if petitioner can show that there was no reasonable prospect of recovering the stolen property or being compensated for it. We agree with respondent.

The parties agree that the law of Illinois applies. Under Illinois law, a theft loss requires an illegal taking done with criminal intent. 720 Ill. Comp. Stat. Ann. sec. 5/16-1 (West 2002). The parties disagree, however, on whether a theft occurred under Illinois law. We need not decide this dispute. We find on the record before us that petitioner failed to establish the amount of any loss for either 2002 or 2004, let alone whether Loretta's activities constituted a theft.

Petitioner offered only one witness, Ms. Branch, who admitted that she had never met Loretta. In addition, Ms. Branch admitted that she never saw or spoke to Dr. Moragne during the years at issue. We did not find her to be a credible or reliable

witness as to whether a theft occurred during the years at issue. We are left to speculate how Loretta used most of the funds. We refuse to speculate. Moreover, the parties stipulated to bank statements of the joint Shorebank account and certain checks drawn on that account by Loretta. Petitioner failed to provide any explanation, however, how Loretta used the funds or more importantly whether Dr. Moragne approved or authorized the expenditures. In addition, several of the checks were endorsed by Dr. Moragne[9] along with Loretta. We are compelled to find that Dr. Moragne authorized Loretta to control his checkbook and expend his funds in the same way he had authorized Ms. Branch to do before his 7-year marriage to Loretta. Petitioner also failed to present any evidence demonstrating that every dollar deposited into the account was Dr. Moragne's and that every dollar withdrawn was spent for Loretta's benefit, not Dr. Moragne's. We hold that petitioner failed to establish the amount of any loss and is therefore not entitled to any deduction.[10]

_____

[9]We place no weight upon Ms. Branch's testimony that she thought Dr. Moragne's signature was forged on certain checks. Even she admitted that Dr. Moragne's surgeries may have caused his handwriting to change.

[10]In addition, no theft occurred because Loretta had an ownership interest in most or all of the allegedly stolen funds. The withdrawal of funds from a joint bank account under Illinois law by only one of the account holders is not illegal. Poziombka v. Winkle (In re Estate of Vogel), 684 N.E.2d 1035, 1040 (Ill. App. Ct. 1997); Paskas v. Illini Fed. Sav. & Loan Association, 440 N.E.2d 194, 199 (Ill. App. Ct. 1982); In re Estate of
(continued...)

Additions to Tax

We now focus on the additions to tax.  Respondent determined petitioner liable for late filing additions, late payment additions and estimated tax additions for both 2002 and 2004.  Respondent bears the burden of production to establish that the additions apply.  See sec. 7941(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  The late filing additions, late payment additions and estimated tax additions apply unless it is shown that the taxpayer's failure to comply was due to reasonable cause and not due to willful neglect.[11]  See sec. 6651(a)(1) and (2).  The taxpayer bears the burden of establishing reasonable cause.  Higbee v. Commissioner, supra at 446.  Reasonable cause may exist if a taxpayer exercised ordinary business care and prudence and was nonetheless unable to file the return or pay the tax within the date prescribed by law.  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect means a "conscious, intentional failure or reckless indifference."  United States v. Boyle, 469 U.S. 241, 245 (1985).

---

[10](...continued)
Taggart, 305 N.E.2d 301, 305 (Ill. App. Ct. 1973).  In fact the ownership rights of the nonwithdrawing account owner in the withdrawn funds are terminated and the withdrawing party becomes the sole owner of the withdrawn money to dispense in any manner he or she deems fit.

[11]No general reasonable cause exception exists with regard to estimated tax additions.  Relief is available, however, under the narrow exception of sec. 6654(e)(3)(B).

The Court's standard of review on what elements must be present to constitute "reasonable cause" is de novo. Id. at 249 n.8. Whether those elements are present in a given case is a question of fact. Id. The burden of proving reasonable cause and lack of willful neglect rests on the taxpayer. Id. at 244.

We turn now to the late filing additions under section 6651(a)(1). An addition to tax is imposed if a taxpayer fails to file a timely Federal income tax return. Sec. 6651(a)(1). The record reflects that no return for either 2002 or 2004 was filed until sometime in January 2010, which was after the prescribed due date for either year. Respondent has therefore met his burden of production. Petitioner makes no argument at trial or in briefs that petitioner's failure to file the returns timely was due to reasonable cause. This issue is therefore deemed conceded. See Rule 149(b). The sole argument in petitioner's briefs is that Dr. Moragne was incompetent.[12] The record does not, however, support petitioner's insinuation. There has been

_____

[12]A disability may be reasonable cause for avoiding additions to tax. United States v. Boyle, 469 U.S. 241, 249 n.6 (1985). When raised, the Court has considered significant a psychiatric disorder, mental incapacity or confinement to hospitals for mental illness during the relevant periods to determine whether a disability may constitute reasonable cause. Kowsh v. Commissioner, T.C. Memo. 2008-204; Jordan v. Commissioner, T.C. Memo. 2005-266 (and cases cited therein). Evidence that a taxpayer experienced periods of lucidity, however, throughout periods of disability has convinced this Court to deny a reasonable cause defense. Estate of Long v. Commissioner, T.C. Memo. 1978-172.

no determination that Dr. Moragne was incompetent. Dr. Moragne's two daughters were appointed limited, not plenary, co-guardians of Dr. Moragne's estate in late 2005, which is after the due dates of the returns at issue. The probate court was the appropriate court to have made a determination that Dr. Moragne was incompetent. The probate court did not make any such determination. Accordingly, petitioner is liable for the late filing additions under section 6651(a)(1) for 2002 and 2004.

Next, we address the late payment additions under section 6651(a)(2) for the late payment of taxes shown as due on the substitutes for return that respondent prepared for petitioner for 2002 and 2004. Petitioner has failed to pay the amounts shown on the substitutes for return for 2002 and 2004 and failed to establish reasonable cause for the failures to pay. Petitioner is therefore liable for the late payment additions for 2002 and 2004.

Finally, we address the estimated tax additions under section 6654(a). A taxpayer generally has an obligation to pay estimated income tax for a particular year only if he or she has a required annual payment for that year. Sec. 6654(d). The required annual payment is equal to the lesser of (1) 90 percent of the tax shown on the individual's return for that year (or if no return is filed, 90 percent of the tax for such year) or (2) 100 percent of the tax shown on the return if the taxpayer filed

a return for the immediately preceding tax year.  Sec. 6654(d)(1)(B); <u>Wheeler v. Commissioner</u>, 127 T.C. 200, 210-211 (2006), affd. 521 F.3d 1289 (10th Cir. 2008).

Petitioner had a required annual payment for 2002 and 2004 but did not make any estimated tax payments.  Petitioner failed to present any evidence to contradict respondent's determination, and none of the statutory exceptions under section 6654(e) applies.  Consequently, petitioner is liable for the estimated tax additions under section 6654(a) for 2002 and 2004.

We have considered all arguments made in reaching our decisions, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.