*In re* ESTATE OF SOPHIE FRIEDMAN, Deceased (Helen Shafton, Petitioner-Appellee, *v.* Joan Morris, Respondent-Appellant).

First District (2nd Division)   Nos. 82—3068, 83—1335 cons.

Opinion filed March 27, 1984.

Larry S. Kajfes, Ltd., Frederick F. Cohn, and Robert Freeman, all of Chicago, for appellant.

Johnson & Armel, of Chicago, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Petitioner Helen Shafton initiated a citation proceeding to recover the monies from certain bank accounts which had been held jointly by the deceased, Sophie Friedman, and the respondent, Joan Morris. After a bench trial, the court ruled that the proceeds of the accounts belonged to Sophie Friedman's estate and ordered respondent to repay to the estate the balances of these accounts plus various sums expended from these accounts on deceased's behalf. Respondent appeals from this order.

While this appeal was pending, respondent filed a claim against the estate to recover those sums of money expended by respondent on decedent's behalf. The court denied the claim and respondent appealed from this order also. The appeals have been consolidated.

Prior to her husband's death on February 20, 1976, Sophie Friedman established several bank accounts in her name alone. Up until August 1976, Friedman was in good health and managed her own affairs. On August 5, 1976, she became ill and was hospitalized. During this hospitalization, Friedman asked Joan Morris, her daughter, to bring a joint tenancy agreement for one of her accounts containing about $13,500. Morris brought the agreement and she and her mother executed it. The account bore Friedman's social security number and Friedman reported the interest for income tax purposes.

Friedman was released from the hospital on October 5, 1976, and she began living with Morris and her husband. Friedman stayed with Morris until March 9, 1977, when she again became ill and required hospitalization. Following this hospitalization, Friedman required constant care and was admitted to a nursing home. During the final 2½ years of her life, Friedman lived in either nursing homes or hospitals. During this period, Friedman requested that Morris acquire joint tenancy agreements for several of her bank accounts. These accounts were converted to joint accounts with Friedman and Morris as owners between the end of June 1977 and the middle of September 1977. Each account bore Friedman's social security number, and Friedman reported the interest on these accounts for income tax purposes.

During the final 2½ years of her life, Friedman directed Morris as to which deposits and withdrawals to make from the joint accounts. Morris did, however, make two withdrawals for her personal

use. On May 16, 1979, Morris withdrew $7,270 from one of the accounts and purchased a grand piano for her home. And on November 1, 1979, eight days before Friedman died, Morris withdrew $10,000 and purchased a certificate of deposit in her name alone. On November 9, 1979, Friedman died at the age of 71.

It is not disputed that during the final years of Friedman's life, respondent Morris devoted a great deal of time to looking after Friedman's well-being and affairs. Friedman lived with Morris for six months and Morris maintained a room in her home for her mother until Friedman died. During Friedman's lengthy stay in hospitals and nursing homes, Morris and her husband visited Friedman twice weekly and took her on numerous outings. Morris also ran errands for her mother and, at her mother's direction, handled most of her financial affairs.

It is also not disputed that Friedman was estranged from her only other child, petitioner Helen Shafton. The evidence revealed that Shafton and Friedman had not seen or talked to each other in the six years prior to Friedman's death.

On July 25, 1980, Shafton was appointed administratrix of what was then believed to be Friedman's intestate estate. A will was later located in which Joan Morris was named executrix of the estate and letters of office were issued to Morris on June 12, 1981. Shafton then filed a citation petition to compel Morris to pay into the estate the sums contained in the joint accounts. Following a bench trial, the court ordered Morris to pay into the estate all sums which were in the accounts at Friedman's death, including those sums expended for Friedman's funeral. Following a denial of her motion for a new trial, Morris appealed.

During the pendency of that appeal, Morris filed a claim against Friedman's estate seeking to recover those sums expended exclusively for Friedman's care and funeral expenses. The claim was denied, and Morris instituted an appeal which was consolidated with the appeal from the order in the citation proceeding.

Initially, we will address respondent's contention that the trial court erred in holding that decedent did not intend to make a gift of the accounts she held jointly with respondent.

Between August 1976 and November 1979 the deceased, Sophie Friedman, converted several of her savings accounts into joint accounts with Joan Morris as the joint owner. Morris contends that, at the time the joint accounts were established, Friedman intended that Morris should keep any balance remaining in the accounts at Friedman's death. Helen Shafton, petitioner, contends that the joint ac-

counts were established merely for Friedman's convenience and were not intended as a gift.

The creation of a joint account by a parent with the right of survivorship in a child creates a presumption of a valid gift to the child as the surviving joint tenant. *In re Estate of Guzak* (1979), 69 Ill. App. 3d 552, 554-55, 388 N.E.2d 431.

> "The presumption is not conclusive but the burden is upon the one who challenges the gift to present clear and convincing evidence of the absence of a donative intent. [Citations.] In determining whether the donor actually intended to transfer his interest in the account at his death to the surviving joint tenant, it is proper to take into consideration the facts surrounding the creation of the joint account and all circumstances and events occurring after the creation of the joint account. [Citations.] Especially relevant to such a determination is the exercise of authority and control over the joint account. [Citations.] The fact that the surviving joint tenant did not consider himself as having any ownership in the account may be considered in determining the intent of the creator of the account. [Citation.] Evidence that the transfer was made for the mere convenience of the creator of the account is an indication of lack of donative intent. [Citations.] Another factor to be considered is the quantity of personal property involved in comparison to the total assets of the estate. [Citations.]" 69 Ill. App. 3d 552, 555.

In the instant case, petitioner produced substantial evidence that by establishing the joint accounts, the deceased did not intend to make a gift of the accounts to Joan Morris. The evidence revealed that, after establishing the joint accounts, the deceased retained exclusive authority and control over the accounts by directing that the passbook for the accounts be kept in a lock-box in her room at Joan Morris' home. The fact that Morris dealt with the accounts only at Friedman's direction and in furtherance of Friedman's personal affairs indicates that Morris did not consider herself as having any ownership in the accounts. Moreover, there was evidence which strongly indicates that Friedman established the accounts for her convenience.

Prior to her convalescence in hospitals and nursing homes, Sophie Friedman personally handled her financial affairs. After her first hospitalization, however, Friedman increasingly relied upon Morris to handle her financial affairs until, finally, Morris handled all of Friedman's affairs. It was at the time of her first hospitalization that Friedman established the first joint account with Morris. The accounts were apparently opened with Friedman's personal funds. Morris de-

posited no more than $100 in these accounts. The foregoing is strong evidence that the joint accounts were established merely for Friedman's convenience. We find that petitioner overcame the presumption of donative intent through clear and convincing evidence. Thus, the burden shifted to respondent to prove that decedent established the accounts with donative intent. (See *Dixon National Bank v. Morris* (1964), 51 Ill. App. 2d 307, 310, 201 N.E.2d 248, *aff'd* (1965), 33 Ill. 2d 156, 210 N.E.2d 505.) The record on appeal, however, does not reveal that respondent met this burden.

■ Respondent testified that decedent intended that she keep the balance in the joint accounts for herself. The balance of respondent's evidence revealed the close relationship between respondent and her mother and the amount of care respondent gave decedent during the final 2½ years of decedent's life. From this evidence, one would presume that decedent would be grateful and would reward respondent accordingly. But it does not necessarily follow that decedent expressed her gratitude by establishing the joint accounts with the intent that respondent retain the balances. It is just as reasonable to conclude that decedent's gratitude to respondent was manifested in decedent's will. If the will contained a bequest to respondent which was large in proportion to the other bequests, this would be a strong indication that the joint accounts were established merely for decedent's convenience. Conversely, if respondent's bequest was proportionately small, this would indicate that perhaps decedent intended that respondent keep the joint accounts for herself. All this is mere conjecture, however, because decedent's will was not made a part of the record on appeal.

We are aware that the will was entered into evidence in the proceedings below, but as a court of review, we may consider only that which has properly been made a part of the record on appeal. (See *Gille v. Winnebago County Housing Authority* (1970), 44 Ill. 2d 419, 427, 255 N.E.2d 904.) As appellant, it was respondent's responsibility to supply this court with everything in the record necessary to decide the issues on appeal. (See *Heritage Shelter Care Home, Inc. v. Miller* (1975), 31 Ill. App. 3d 700, 703, 334 N.E.2d 355.) Despite our musings as to what the will would have revealed as to decedent's intentions, we are bound to review the judgment of the circuit court solely in light of the evidence contained in the record on appeal. In the absence of a contrary indication in the record, we must presume that the circuit court acted properly. (See *Coombs v. Wisconsin National Life Insurance Co.* (1982), 111 Ill. App. 3d 745, 746, 444 N.E.2d 643.) Based on the record before us, we cannot say that the circuit court's finding

that the joint accounts in the instant case were established merely for decedent's convenience and without donative intent was erroneous. Our finding on this issue makes it unnecessary to address the propriety of the court's finding of a fiduciary relationship between respondent and the deceased.

■ Respondent next contends that "[t]he trial court erred in ordering respondent to pay back to the estate monies expended solely on behalf of deceased." Under this contention, respondent itemizes 38 separate expenditures made on deceased's behalf. Upon examining these expenditures, however, it is not apparent that the court's order requires respondent to pay back into the estate all of the expenditures listed.

Thirty-four of the expenditures cited by respondent were made after April 8, 1978, but before Sophie Friedman died on November 10, 1979. During this period, it is undisputed that such expenditures were made from accounts held jointly by Sophie Friedman and respondent Joan Morris and were deducted from the balances in those accounts. Thus, at Friedman's death, the balances in the joint accounts did not include those sums expended on Friedman while she was alive.

The order of the trial court in the instant citation proceeding required respondent to pay back to Sophie Friedman's estate the balances in the joint accounts plus some $17,000 withdrawn from one of those accounts by respondent for her personal use. The balances to be returned were those which remained in the joint accounts at the time of Sophie Friedman's death. These date-of-death balances obviously did not include expenditures made during Friedman's life, and respondent is therefore mistaken in her belief that the court's order requires her to pay back such expenditures.

The four remaining expenditures, totalling $2,949.60, were made from the joint accounts in issue after Friedman's death. All four expenditures were directly related to Friedman's funeral and burial expenses. We find that respondent, by making these expenditures, was acting in the good faith belief that she was properly satisfying the debts of the estate. (See *In re Estate of Hale* (1983), 111 Ill. App. 3d 962, 964, 444 N.E.2d 1370.) It would be unjust to penalize respondent for benefitting the estate by paying a necessary cost of administration, and we therefore order a reduction of $2,949.60 in the amount of respondent's judgment debt.

■ Respondent also appeals from an order denying her request for reimbursement from Friedman's estate of certain expenditures made on Friedman's behalf. Respondent has failed, however, to include in the record on appeal a report of proceedings which led to

that order. In the absence of such a report, we must presume that the trial court heard sufficient evidence to support its decision. (*Nelson v. Nelson* (1974), 17 Ill. App. 3d 651, 656, 308 N.E.2d 132.) We decline, therefore, to consider this portion of respondent's appeal.

For the reasons expressed herein, the sum which respondent is directed to reimburse to the estate of Sophie Friedman shall be reduced by $2,949.60. In all other respects, the judgment of the circuit court is affirmed.

Affirmed.

PERLIN and DOWNING, JJ., concur.